531 So.2d 113 (1988)
Dempsey J. BARRON, Petitioner,
v.
FLORIDA FREEDOM NEWSPAPERS, INC., Respondent.
No. 70910.
Supreme Court of Florida.
August 25, 1988.
Rehearing Denied September 28, 1988.
*114 Sharon Lee Stedman of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Orlando, for petitioner.
Franklin R. Harrison and William A. Lewis of Sale, Brown & Smoak, Chartered, Panama City, for respondent.
C. Gary Williams, Michael J. Glazer and Timothy B. Elliott of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, amicus curiae for Tallahassee Democrat, Inc.
William G. Mateer, David L. Evans and Clay H. Coward of Mateer, Harbert & Bates, P.A., Orlando, amicus curiae for Sentinel Communications Co.
Gerald B. Cope, Jr. and Laura Besvinick of Greer, Homer, Cope & Bonner, P.A., and Richard J. Ovelmen, The Miami Herald Pub. Co., Miami, amicus curiae for The Miami Herald Pub. Co.
George K. Rahdert and Bonita M. Riggens of Rahdert, Acosta & Dickson, P.A., St. Petersburg, amicus curiae for The Times Pub. Co.
OVERTON, Justice.
This is a petition to review Florida Freedom Newspapers, Inc. v. Sirmons, 508 So.2d 462 (Fla. 1st DCA 1987), which reversed a trial court order sealing a substantial portion of the court file in a dissolution proceeding between Dempsey J. Barron, a state senator, and Louverne Barron. The district court acknowledged conflict with Sentinel Communications Co. v. Smith, 493 So.2d 1048 (Fla. 5th DCA 1986), review denied, 503 So.2d 328 (Fla. 1987). We find the district court expressly construed article I, section 23, of the Florida Constitution, agree there is conflict, and accept jurisdiction.[*]
We hold that all trials, civil and criminal, are public events and there is a strong presumption of public access to these proceedings and their records, subject to certain narrowly defined exceptions. We have articulated principles that govern these exceptions and, after applying them to this case, we find no basis to seal the file. Although we disagree in part with the district court's reasoning, we approve the result.
On January 28, 1986, Louverne Barron filed a petition for dissolution of marriage in the Bay County Circuit Court against her husband, Dempsey Barron. In early September, after an answer was filed, the wife sought to amend her petition and add Terri Jo Kennedy, the executive director of the rules committee of the Florida Senate, as a party defendant. The husband immediately filed a motion to seal the file. The trial court granted the wife's motion to add Kennedy as a party defendant and entered a summary order sealing the file.
Approximately three weeks later, the respondent, Florida Freedom Newspapers, Inc., filed motions to intervene in the proceeding and to set aside the closure order. The trial judge permitted intervention but denied the motion to set aside the closure *115 order with an explanatory order expressly relying on Sentinel Communications and State ex rel. Gore Newspaper Co. v. Tyson, 313 So.2d 777 (Fla. 4th DCA 1975), overruled on other grounds, English v. McCrary, 348 So.2d 293 (Fla. 1977). The judge explained that the court, through its inherent power, may exclude the public and press from any judicial proceedings to protect the litigants' rights if "cogent reasons" exist. He found that a "cogent reason" for closure was presented but stated that any expression of that reason in the court's order would have "then in fact ... done away with the reason to keep the file sealed." Further, the court held that the information was "uniquely private to the individual involved" and "the public records act does not apply to this information."
Florida Freedom Newspapers, Inc., sought appellate review under rule 9.100(d), Florida Rules of Appellate Procedure, asserting that the order excluded the press and public from access to judicial records, and requested a stay of the dissolution proceeding pending resolution of the closure issue. The district court granted the stay. Subsequently, the wife sought to vacate the stay explaining that this collateral issue was causing her hardship by preventing the continuation of the dissolution proceeding. The district court vacated the stay, summarily affirmed the order sealing the records, and stated that an opinion would follow.
Within a month, the trial court held a final hearing and entered a final judgment, part of which was sealed. The unsealed portion dissolved the marriage; made equitable distribution of the property; ordered the husband to allow the wife to continue as a beneficiary under his insurance policy until May 31, 1990; ordered the husband to pay $500 a month periodic alimony; determined that Dempsey Barron's conveyance to Terri Jo Kennedy of a life estate in real property in Wyoming was fraudulent and ordered it set aside; and ordered the husband to pay one-half of the wife's attorney's fees. The public part of the judgment referred to the sealed portion and stated:
2. This court's order setting forth findings of fact shall be incorporated into and made part of this final judgment, but due to this court's order sealing the file, that order will remain a part of the sealed court file. This final judgment however shall not be part of the sealed court file if either the husband or the wife need to present certified copies of the judgment for whatever purposes they may deem appropriate.
The sealed order containing the findings of fact is ten pages in length, while the unsealed portion is three pages. Neither party appealed this final judgment.
Subsequently, on June 1, 1987, the district court rendered an opinion overruling its prior order and directed that the file be opened. In explaining its changed position, the court expressed its inability to accept the principles set forth in Sentinel Communications and rejected the trial court's finding that a cogent reason existed for closing the proceeding. The court stated:
We do not find the facts upon which the trial court based this finding to be sufficiently compelling to require the proceedings be conducted in private, thereby denying the public, including the press, the right to attend these proceedings and the right to examine the court file. In essence, one of the parties wished to conduct the proceedings in private to prevent the disclosure of certain information the party would otherwise prefer not be made public. The information is of a somewhat general nature and not specifically tied to a domestic relations case. The information is not related to the marital relationship nor its breakup, to the welfare of the children, nor to the marital property. The party affected suggests it is related to present and future financial support. This may be so, but we do not find this reason to be sufficiently compelling, rising to the level that would deny the party an opportunity to receive a fair trial, to justify closing these proceedings.
Florida Freedom Newspapers, Inc. v. Sirmons, 508 So.2d at 464-65 (footnotes omitted). The court also concluded that there was "no reason why the three-pronged test *116 set forth in Miami Herald Publishing Company v. State, 363 So.2d 603 (Fla. 4th DCA 1978), [would] not work as well in civil cases." Id. at 464 (footnote omitted). Further, the court held that the privacy provision in article I, section 23, of the Florida Constitution, providing that citizens of this state shall have the "right to be let alone from government intrusion," is inapplicable to this type of proceeding. Id. at 463. In a concurring opinion, Judge Nimmons expressed the view that this constitutional provision must "be taken into consideration by trial courts in the determination of whether access to a civil court proceeding by the public and the press should be limited or denied," id. at 465 (footnote omitted), but agreed with the majority that the "grounds for closure presented by Barron and relied upon by the trial court were insufficient to overcome the heavy common law presumption in favor of access." Id. at 466.
In this review, Dempsey Barron argues that the trial court properly found a cogent reason for closure and that, upon that determination, an appellate court must limit its inquiry to whether or not the trial court abused its discretion. Further, he argues that since dissolution proceedings do not involve the state and are private in nature, the parties involved have a fundamental statutory and constitutional right of privacy to have their files sealed regardless of their public-figure status. We reject these arguments for the reasons expressed below.

Public Access to Civil Court Proceedings
At the outset, we hold that both civil and criminal court proceedings in Florida are public events and adhere to the well established common law right of access to court proceedings and records. In Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947), the United States Supreme Court held: "A trial is a public event. What transpires in the court room is public property... . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." In Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 2829 n. 17, 65 L.Ed.2d 973 (1980), Chief Justice Burger stated: "Whether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open." In a concurring opinion, Justice Stewart expressed that "the first and fourteenth amendments clearly give the press and public a right of access to trials themselves, civil as well as criminal." Id. at 599, 100 S.Ct. at 2839. See also Publicker Industries, Inc. v. Cohen, 733 F.2d 1059 (3d Cir.1984); Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n, 710 F.2d 1165 (6th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); In re Astri Investment, Management & Securities Corp., 88 B.R. 730 (D.Md. 1988).
While this Court has recognized the common law right of access to criminal proceedings in Bundy v. State, 455 So.2d 330 (Fla. 1984), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), and Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), we have not expressly done so in civil proceedings. The reason for openness is basic to our form of government. Public trials are essential to the judicial system's credibility in a free society. The Supreme Court of California, in In re Shortridge, 99 Cal. 526, 530-31, 34 P. 227, 228-29 (1893), justified the public's right to know what transpires in both civil and criminal courtrooms and stated:
In this country it is a first principle that the people have the right to know what is done in their courts. The old theory of government which invested royalty with an assumed perfection, precluding the possibility of wrong, and denying the right to discuss its conduct of public affairs, is opposed to the genius of our institutions, in which the sovereign will of the people is the paramount idea; and the greatest publicity to the acts of those holding positions of public trust, and the greatest freedom in the discussion of the proceedings of public tribunals that is *117 consistent with truth and decency, are regarded as essential to the public welfare. Therefore, when it is claimed that this right has in any manner been abridged, such claim must find its support, if any there be, in some limitation expressly imposed by the lawmaking power, or the right to exercise the authority claimed must be necessarily implied as essential to the execution of the powers expressly conferred.
Wigmore also articulated reasons for public access to all court proceedings, explaining:
The publicity of a judicial proceeding is a requirement of much broader bearing than its mere effect upon the quality of testimony... . Nevertheless, it plays an important part as a security for testimonial trustworthiness... .
(1) Its operation in tending to improve the quality of testimony is twofold. Subjectively, it produces in the witness' mind a disinclination to falsify; first, by stimulating the instinctive responsibility to public opinion, symbolized in the audience, and ready to scorn a demonstrated liar; and next, by inducing the fear of exposure of subsequent falsities through disclosure by informed persons who may chance to be present or to hear of the testimony from others present. Objectively, it secures the presence of those who by possibility may be able to furnish testimony in chief or to contradict falsifiers and yet may not have been known beforehand to the parties to possess any information.
... .
(2) The other reasons ... for requiring publicity are of three distinct sorts:
(a) Subjectively, a wholesome effect is produced, analogous to that secured for witnesses, upon all the officers of the court, in particular, upon judge, jury, and counsel. In acting under the public gaze, they are more strongly moved to a strict conscientiousness in the performance of duty. In all experience, secret tribunals have exhibited abuses which have been wanting in courts whose procedure was public.
(b) Persons not called as parties to the suits before the court may nevertheless be affected, or think themselves likely to be affected, by pending litigation. They should have the opportunity of learning whether they are thus affected, and of protecting themselves accordingly; they have "a right to be present for the purpose of hearing what is going on."
(c) The educative effect of public attendance is a material advantage. Not only is respect for the law increased and intelligent acquaintance acquired with the methods of government, but a strong confidence in judicial remedies is secured which could never be inspired by a system of secrecy... .
6 Wigmore, Evidence § 1834 (Chadbourn rev. 1976) (emphasis in original; footnotes omitted). We fully approve the reasoning of Shortridge and Wigmore.
While a strong presumption of openness in judicial proceedings exists, the law has established numerous exceptions to protect competing interests. These exceptions fall into two categories: the first includes those necessary to ensure order and dignity in the courtroom and the second deals with the content of the information. We address only the second category in this case. Because of the strong openness presumption, a closure order must be drawn with particularity and narrowly applied.
In Miami Herald Publishing Co. v. Lewis, we modified the Fourth District's test regarding closure of criminal proceedings. We directed that trial judges apply the following three-pronged test when considering closure of criminal court proceedings:
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than a change of venue, which would protect the defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
*118 426 So.2d at 6. This test, derived primarily because of first amendment contentions, was designed to address the problems of prejudicial pretrial publicity and the competing constitutional rights to a fair trial by an impartial jury for criminal defendants. The test was not conceived or drawn to address closure in civil proceedings.
In State ex rel. Gore Newspaper Co. v. Tyson, the Fourth District addressed the closure of a dissolution proceeding. The court reversed a closure order and stated that it could not permit closure "solely upon the wishes of the parties to the litigation, absent cogent reasons." 313 So.2d at 788. The court recognized the trial court's authority to close civil proceedings, stating:
The court, under its inherent power, may for cogent reasons exclude the public and press from any judicial proceeding to protect the rights of the litigants and to otherwise further the administration of justice;
In determining the restrictions to be placed upon access to judicial proceedings, the court must balance the rights and interests of the parties to the litigation with those of the public and press;
The type of civil proceeding, the nature of the subject matter and the status of the participants are factors to be considered when evaluating the cogent reasons for excluding the public and press from access to the courts.
Id. at 787. We are in general agreement with this holding, recognizing that trial courts may exercise their power to close all or part of a proceeding in limited circumstances. In this regard, we feel that a definitive statement by this Court is necessary to assist judicial officers in this sensitive area. We conclude that the following factors must be considered to determine a request for closure of a civil proceeding.
First, a strong presumption of openness exists for all court proceedings. A trial is a public event, and the filed records of court proceedings are public records available for public examination.
Second, both the public and news media shall have standing to challenge any closure order. The burden of proof in these proceedings shall always be on the party seeking closure.
Third, closure of court proceedings or records should occur only when necessary (a) to comply with established public policy set forth in the constitution, statutes, rules, or case law; (b) to protect trade secrets; (c) to protect a compelling governmental interest [e.g., national security; confidential informants]; (d) to obtain evidence to properly determine legal issues in a case; (e) to avoid substantial injury to innocent third parties [e.g., to protect young witnesses from offensive testimony; to protect children in a divorce]; or (f) to avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of civil proceeding sought to be closed. We find that, under appropriate circumstances, the constitutional right of privacy established in Florida by the adoption of article I, section 23, could form a constitutional basis for closure under (e) or (f). In this regard, we disagree with the district court in the instant case. Further, we note that it is generally the content of the subject matter rather than the status of the party that determines whether a privacy interest exists and closure should be permitted. However, a privacy claim may be negated if the content of the subject matter directly concerns a position of public trust held by the individual seeking closure.
Fourth, before entering a closure order, the trial court shall determine that no reasonable alternative is available to accomplish the desired result, and, if none exists, the trial court must use the least restrictive closure necessary to accomplish its purpose.
Fifth, the presumption of openness continues through the appellate review process, and the party seeking closure continues to have the burden to justify closure. This heavy burden is placed on the party seeking closure not only because of the strong presumption of openness but also because those challenging the order will *119 generally have little or no knowledge of the specific grounds requiring closure.
We find no justification to give dissolution proceedings special consideration, as advocated by Dempsey Barron. The parties seeking a dissolution of their marriage are not entitled to a private court proceeding just because they are required to utilize the judicial system. Dissolution proceedings are regulated by statute and are unique because the state is considered an interested third party to protect the public welfare. See, e.g., Perez v. Perez, 164 So.2d 561 (Fla. 3d DCA 1964); Harman v. Harman, 128 So.2d 164 (Fla. 3d DCA 1961). While Florida, as a matter of public policy, has expressly made certain civil proceedings confidential (adoptions, § 63.162, Fla. Stat. (1987); paternity, § 742.031, Fla. Stat. (1987); juvenile proceedings, § 39.09 and 39.408, Fla. Stat. (1987)) and some states have enacted legislation limiting public access to divorce proceedings (Cal. [Civ.] Code § 4360 (Deering 1984); Del. Code Ann. tit. 13, § 1516 (1981)), the Florida Legislature has chosen not to do so. We conclude that dissolution proceedings must be treated similar to other civil proceedings, and thus the presumption of openness applies.
In Sentinel Communciations, the Fifth District held that parents and children in a dissolution proceeding had privacy rights that justified closure of the court file. We disapprove that decision to the extent it implies that parties to all dissolution proceedings involving minor children have an absolute privacy right to seal the file. We also disapprove that portion placing the burden of proof on the challenging party rather than the party seeking closure. We agree with the closure in Sentinel Communciations because of the express finding of injury to an innocent third party. In that proceeding, the trial judge determined that a minor child had been adversely affected by the litigation and that continued publicity would in all likelihood be "highly detrimental" to that child. That factual finding makes it distinguishable from the instant case.

The Instant Case
After thoroughly reviewing the sealed and unsealed portions of the instant case and applying the principles outlined above, we conclude that the sealed portion of this file does not contain protected information. The undisclosed matter primarily concerns medical reports regarding one party's physical condition. That party asserted the condition to justify certain actions and conduct. Although generally protected by one's privacy right, medical reports and history are no longer protected when the medical condition becomes an integral part of the civil proceeding, particularly when the condition is asserted as an issue by the party seeking closure. The sealed findings of fact here clearly establish that the medical records were an integral part of this case. This medical information is similar to that presented in personal injury actions, workers' compensation proceedings, and other dissolution of marriage proceedings. In dissolution proceedings, it is not unusual for a party's medical condition to be relevant in determining appropriate alimony, child support, or property disposition. Accordingly, we conclude that the medical information is an inherent part of these proceedings and cannot be utilized as a proper basis for closure. In view of this holding, it is unnecessary to determine whether the public positions held by Dempsey Barron and Terri Jo Kennedy create an additional basis to open these proceedings.
For the reasons expressed, we agree with the district court that there was no justifiable basis for closure. Upon this opinion's becoming final, the order sealing the file will be vacated and the entire file will be open and available for examination in the same manner as any other court file.
It is so ordered.
SHAW, GRIMES and KOGAN, JJ., concur.
EHRLICH, C.J., concurs in the result only with an opinion.
*120 BARKETT, J., concurs specially with an opinion.
McDONALD, J., dissents with an opinion.
EHRLICH, Chief Justice, concurring in result only with opinion.
I would approve the district court's decision reversing the trial court's order closing the court file. I agree with the majority that the three-prong test set forth in Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), applicable to closure of pretrial criminal proceedings was not designed to address factors to be considered when closing civil proceedings. I also concur with all aspects of the test for closure adopted by the majority with the exception of reason (f) which is based on a litigant's right of privacy. Because I do not believe that article I, section 23, of the Florida Constitution is implicated in judicial proceedings, the privacy interests of civil litigants should not be a consideration.
This Court has recognized that before the right of privacy attaches a legitimate expectation of privacy must exist. Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla. 1985). We have also recognized that "[t]he potential for invasion of privacy is inherent in the litigation process." Rasmussen v. South Florida Blood Service, 500 So.2d 533, 535 (Fla. 1987). While civil litigants may have a legitimate expectation of privacy in pretrial depositions and interrogatories which are not filed with the court, see Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 2207-08, 81 L.Ed.2d 17 (1984) (pretrial depositions and interrogatories are not public components of a civil trial); Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378, 382 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987) (deposition proceedings are not public component of a trial unless made so by the parties), no such expectation exists in connection with civil proceedings and court files which historically have been open to the public. See Forsberg v. Housing Authority, 455 So.2d 373, 375 (Fla. 1984) (Overton, J., concurring) (there is traditionally no expectation of privacy in court files). Therefore, I can not accept the majority's conclusion that "under appropriate circumstances, the constitutional right of privacy ... could form a constitutional basis for closure." At 118. I agree with the district court below that article I, section 23 does not create a right to private judicial proceedings.
BARKETT, Justice, specially concurring.
I write to express my deep concern over the competing interests involved in this case. I agree wholeheartedly with the majority's analysis and concern for open courts in our democratic society. I cannot agree, however, that dissolution proceedings are not entitled to some special considerations.
It seems to me that the public interest in access is diminished when the issue does not involve government or questions affecting the general public. Looking purely at the issues to be decided in dissolution of marriage cases, the public usually will not learn any information useful in assessing governmental functioning. Nor will it obtain information important in making informed decisions about matters affecting the public at large. Simultaneously, there may be grave danger that the litigants' personal rights or those of third parties will be harmed by scandalmongering, the sole effect of which is to undermine reputation, privacy or justice.
I agree with the United States Supreme Court's observation that access can be denied where it would be "`used to gratify private spite or promote public scandal' through the publication of `painful and sometimes disgusting details of a divorce case'." Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (quoting In re Caswell, 18 R.I. 835, 836, 29 A. 259 (1893)).
By their very nature, dissolution cases always involve significant privacy rights. Thus, the privacy interests in those cases must be given greater consideration than, perhaps, in other kinds of civil litigation.
*121 McDONALD, Justice, dissenting.
In my opinion, the rights of the public to information contained in a domestic relations lawsuit is minimal, if existent at all.[*] At the very least, a trial judge has the discretion to weigh the public's desire to satisfy its curiosity against the litigant's right to keep private matters peculiarly private to him or her. Otherwise a litigant may be faced with the decision of whether or not to present relevant or vital evidence becuase of fear that the disclosure would harm one party or another.
In this case, the trial judge weighed the public's access rights against potential private harm. Mr. Barron relied on the ruling of closure in presenting his evidence. Had he known that the evidence would be subject to the eyes of third parties, he may not have presented it. In any event, I fail to see where the trial judge's discretion in closing the file was abused, and his actions should therefore be affirmed.
NOTES
[*] Art. V, § 3(b)(3), Fla. Const.
[*] I fully agree that the public has access to the evidence in criminal trials, because the public, in effect, is a party to criminal cases. Such a situation may exist in some types of civil cases. On the other hand, I feel that domestic relations controversies are basically private and access to the facts in such cases can more readily be limited.