587 So.2d 526 (1991)
John DOE, et al., Petitioners,
v.
STATE of Florida, News and Sun-Sentinel Company, The Miami Herald Publishing Company, Nbc Subsidiary (WTVJ-TV), Inc., Post-Newsweek Stations, Florida, Inc., d/b/a WPLG, King Communications, Inc., d/b/a WFTL Radio, Jeffrey Willets and Kathy Willets, Respondents.
No. 91-2550.
District Court of Appeal of Florida, Fourth District.
September 27, 1991.
Rehearing and/or Clarification and Request for Review Denied October 25, 1991.
Richard L. Rosenbaum of Law Offices of Richard L. Rosenbaum, Fort Lauderdale, Mark King Leban, of Law Offices of Mark King Leban, P.A., Miami and Jerome M. Rosenblum, P.A., Mark E. Berman of Rosenblum & Oliver, P.A., Hollywood, Jeffrey M. Harris of Jeffrey M. Harris, P.A., Kenneth E. DeLegal, of Law Offices of Kenneth E. DeLegal, Thomas E. Cazel, of Allsworth, Doumar, Cazel, Curtis and Cross, Alan Jay Braverman, of Law Offices of Alan Jay Braverman, P.A., Fort Lauderdale, for petitioners  John Does.
Michael J. Satz, State Atty., Seventeenth Judicial Circuit, and James P. McLane, *527 Asst. State Atty., Fort Lauderdale, for respondent  State of Fla.
Ray Ferrero, Jr. and Joanne Fanizza of Ferrero & Middlebrooks, P.A., Fort Lauderdale, for respondents  News and Sun-Sentinel Co., The Miami Herald Pub. Co., and NBC Subsidiary, Inc.
Norman Elliott Kent of Norman Elliott Kent, P.A., Fort Lauderdale, for King Communications, Inc., d/b/a WFTL Radio.
Sanford L. Bohrer and Karen Williams Kammer of Thomson Muraro Bohrer & Razook, P.A., Miami, for Post-Newsweek Stations, Florida, Inc., d/b/a WPLG Channel 10.
No appearance for respondents Jeffrey Willets and Kathy Willets.
Rehearing and/or Clarification and Request for Review En Banc Denied October 25, 1991.
PER CURIAM.
This matter is before the court upon a petition for writ of certiorari to review an order of the trial court denying nonparty motions to restrict or limit public access to pretrial discovery materials in a criminal case.
The order in question was entered in a criminal proceeding in Broward County, Florida, styled: State of Florida, Plaintiff, vs. Jeffrey Willets and Kathy Willets, Defendants, John Doe, interested party/witnesses, wherein the State of Florida has charged Kathy Willets with prostitution, and Jeffrey Willets, her husband, with living off of the earnings of prostitution. Both defendants were also charged with unlawful interception of telephone conversations.
The record indicates that the situs of the alleged criminal activity was the Willets' home in Fort Lauderdale. Pursuant to a search warrant, various items of personal property were seized from the defendants, including cassette tapes containing recorded telephone conversations, business cards of alleged customers or clients of Kathy Willets, a Rolodex containing the names and addresses of her clients, and various other lists stating the names of her clients, amounts paid and other sexually related notations personal to the customers.
The petitioner here filed a motion in the trial court, in which he was styled as "John Doe," an "interested party/witness," seeking an order to deny public access to pre-trial discovery materials including evidence turned over to defendants by the state attorney. More specifically, the movant sought a protective order limiting the release of business cards, notes, journals, lists and tape recordings which would reveal John Doe's name, address, and intimate personal details. The defendants, Willets, also moved for a similar order to prevent public disclosure of the same evidence. Numerous other John Does styled as interested parties/witnesses intervened and adopted the original motion filed by the petitioner.
The issues drawn below giving rise to an evidentiary hearing were for all intents and purposes litigated by and between the John Does and the media, as the state expressed no objection to disclosure. The media contended that, under the Public Records Act, the court proceedings were mandated to be open to the public and could not be closed or limited at the instance of persons who, by virtue of their own acts, proclivities and activities, became enmeshed in the proceedings. The Does contended generally that disclosure of the evidence in question would cause them to be held up to public scorn, hatred and ridicule, and adversely affect their honesty, integrity, virtue, religious philosophy, and reputation as persons and in their professions.
After a hearing at which the trial judge entertained argument and personally examined a "client list," the trial court denied the motions filed by the various movants and declared the names and addresses of the "clients," as well as the state's potential witnesses list, accessible public records available for public inspection when provided to the defendants by the state attorney. Thereupon, this certiorari proceeding was initiated by the original John Doe movant and has been joined in by various other John Does. Anomalous as it may seem, the state takes no position on the issues raised and the defendants/Willets have not joined in the petition for review of the questioned order.
*528 In a detailed written order, the trial judge stated that he had carefully balanced and analyzed the constitutional and other rights of the defendants, the John Does and the media, in light of the relevant case law and statutory authority. He recognized the media had no First Amendment right of access to pretrial discovery, but found there is a statutory right of access under the Public Records Act, chapter 119, Florida Statutes (1989). See Florida Freedom Newspapers v. McCrary, 520 So.2d 32 (Fla. 1988). He further found that the client list would become a public record upon being released by the state to the defense, which the state advised was imminent. See Tribune Company v. Public Records, 493 So.2d 480 (Fla. 2d DCA 1986), rev. denied, Gillum v. Tribune Company, 503 So.2d 327 (Fla. 1987); Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775 (Fla. 4th DCA 1985), rev. denied, 488 So.2d 67 (Fla. 1986); Satz v. Blankenship, 407 So.2d 396 (Fla. 4th DCA 1981), rev. denied, 413 So.2d 877 (Fla. 1982). Furthermore, the court found that the John Does had no expectation of privacy in said list and in any event that such right would not outweigh the public's right to know. He announced his concern that the public's confidence in the integrity of the criminal justice system be considered, and that it is essential that the public not feel the courts are involved in secret proceedings.
Since the state announced it was prepared to meet the imminent deadline for divulging the matters in its possession as required by rule 3.220, Florida Rules of Criminal Procedure, the John Does sought a stay in the trial court which was denied. This court then upon motion stayed the order being reviewed pending our determination of the propriety thereof.
We have considered on an expedited basis the offerings of the respective parties which have extensively presented the various aspects of the criminal discovery rules, the Public Records Act, and varying views on the application of the right of privacy in the context of the issues presented here. We found many of the questions involving standing of the John Does and their rights of privacy as opposed to the rights of the public and media under the Public Records Act to be difficult of resolution, yet substantial matters of public interest which should and no doubt will be resolved by the supreme court. Thus, after serious consideration of the issues presented, and while not necessarily agreeing with all of the trial court's conclusions, we hold that the petitioners have failed to demonstrate an abuse of discretion or a violation of a clearly established principle of law resulting in a miscarriage of justice. See State v. Pettis, 520 So.2d 250, 254 (Fla. 1988). The petition for writ of certiorari is therefore denied.
Because we conclude it to be a case of great public importance and that the public and parties are entitled to a resolution of this dispute by the state's highest court, we continue the stay previously ordered until such time as this court loses jurisdiction of the cause notwithstanding our denial of the petition. In the absence of continuing the stay until we lose jurisdiction, we would have effectively deprived petitioners of a realistic opportunity for review by the state's highest court. Accordingly, we continue the stay previously entered herein, pending further resolution by the Supreme Court of Florida.
Since, as we indicated above, it is our belief that this case presents issues of great public importance, we certify to the Supreme Court of Florida the following questions:
1. IN A CRIMINAL PROCEEDING CHARGING A DEFENDANT WITH PROSTITUTION, DOES A NON-PARTY WHO CLAIMS A RIGHT OF PRIVACY IN DOCUMENTS HELD BY THE STATE ATTORNEY AS CRIMINAL INVESTIGATIVE INFORMATION HAVE STANDING TO SEEK AN ORDER OF THE TRIAL COURT WHICH WOULD DENY THE PUBLIC AND THE PRESS ACCESS TO EVIDENCE REVEALING NAMES OF THE DEFENDANT'S CLIENTS WHEN PURSUANT TO THE DEFENDANT'S DISCOVERY MOTION THE STATE IS PREPARED TO DELIVER SAID EVIDENCE TO THE DEFENDANTS AS REQUIRED BY FLORIDA RULE OF *529 CRIMINAL PROCEDURE 3.220 AND WHICH UPON DELIVERY WOULD OTHERWISE RENDER THEM `PUBLIC RECORDS' PURSUANT TO BLUDWORTH V. PALM BEACH NEWSPAPERS, INC., 476 So.2d 775 (FLA. 4TH DCA 1985), REV. DENIED, 488 So.2d 67 (FLA. 1986)?
2. IN A CRIMINAL PROCEEDING CHARGING A DEFENDANT WITH PROSTITUTION, DOES THE TRIAL COURT ABUSE ITS DISCRETION UNDER SECTION 119.011(3)(c)5 OF THE PUBLIC RECORDS ACT IN DENYING CLOSURE OF DISCOVERY DOCUMENTS WHERE AN UNNAMED THIRD PARTY CLAIMS THAT RELEASE OF SUCH INFORMATION WOULD BE DEFAMATORY TO HIM AND WOULD INVADE HIS RIGHT OF PRIVACY BOTH UNDER THE ACT, ARTICLE I, SECTION 23 OF THE FLORIDA CONSTITUTION AND THE FEDERAL CONSTITUTION, AND THE TRIAL COURT FINDS THAT RELEASE OF THE INFORMATION WILL HARM THE THIRD PARTY?
GLICKSTEIN, C.J., and DOWNEY, J., concur.
WARNER, J., concurs specially with opinion.
WARNER, Judge, concurring specially.
I concur with the conclusion of the majority that the trial court did not depart from the essential requirements of law and appropriately exercised his discretion in ordering the release of the names and addresses on the "client list" of Kathy Willets.[1] Since my reasoning is markedly different from the analysis of the trial court, I write to elucidate the important principles involved.
I first address the question of a stay of proceedings. Petitioners requested a stay from the trial court which was denied based upon Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984). The media has argued that neither the trial court nor this court has any authority whatsoever to stay the release of the client list. Thus, the trial court's order would become essentially unreviewable since it ordered immediate release. This is a complete misreading of Cannella. In that case the supreme court addressed the question of whether the custodian of a record (in that case the City of Tampa) may delay the release of a public record in order to give affected parties a chance to challenge its release. Nowhere in that opinion did the supreme court ever address the authority of a court to order a stay when a question concerning the proper interpretation of the Public Records Act or of constitutional issues presents itself to the judicial branch for resolution. When so presented, the courts have the inherent authority to issue such orders as are necessary for the complete exercise of their jurisdiction, including a stay of release of the records where necessary for the court to consider the issue before it is rendered moot by their release. We have so exercised our jurisdiction to stay the release of the documents sought by the press below to consider the substantial issues raised.
This case does not involve the abridgment of federal constitutional rights. The press has no First Amendment right of access to pretrial discovery information. Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32 (Fla. 1988); Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378 (Fla. 1987). This case does involve state constitutional and statutory rights. However, in Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court held that the press is absolutely immune from liability for truthfully publishing information released through public documents. The Court went on to say:
If there are privacy interests to be protected in judicial proceedings, the States *530 must respond by means which avoid public documentation or other exposure of private information. Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish.
420 U.S. at 496, 95 S.Ct. at 1047. Both through the interpretation of our right of privacy clause in the Florida Constitution, various legislative enactments and court rules, the legislature and the courts have acted to protect an individual's privacy interests.
The trial court utilized the standard of Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), to analyze whether or not to release the "client list". That test balanced the defendant's right of a fair trial against the public's right to disclosure in pretrial proceedings. Thus, it does not address the question of a third party's right of privacy impacted by public disclosure of pretrial discovery information. However, what the Lewis court said is of importance. First, the court was dealing with the closure of a pretrial hearing, not merely the exchange of unsubstantiated discovery documents. A pretrial hearing is more of a "public event" to which First Amendment considerations might apply. However, noting that there is no First Amendment protection of the press' rights to attend pretrial hearings (and even less in nonjudicial portions of the discovery process), the court stated that, "[w]e should not elevate this non-constitutional privilege of the press [to be present at pretrial hearings] above the constitutional right of the defendant" to a fair trial. Id. at 6. In fact, the court described the defendant's constitutional rights as "paramount" to the press and public's right of access. Id. at 7.
In Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla. 1988), the court modified the Miami Herald v. Lewis test to apply to a civil proceeding. The court set forth the following guidelines to be used in determining a request for closure:
First, a strong presumption of openness exists for all court proceedings. A trial is a public event, and the filed records of court proceedings are public records available for public examination.
Second, both the public and news media shall have standing to challenge any closure order. The burden of proof in these proceedings shall always be on the party seeking closure.
Third, closure of court proceedings or records should occur only when necessary (a) to comply with established public policy set forth in the constitution, statutes, rules, or case law; (b) to protect trade secrets; (c) to protect a compelling governmental interest [e.g., national security; confidential informants]; (d) to obtain evidence to properly determine legal issues in a case; (e) to avoid substantial injury to innocent third parties [e.g., to protect young witnesses from offensive testimony; to protect children in a divorce]; or (f) to avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of civil proceeding sought to be closed. We find that, under appropriate circumstances, the constitutional right of privacy established in Florida by the adoption of article I, section 23, could form a constitutional basis for closure under (e) or (f). In this regard, we disagree with the district court in the instant case. Further, we note that it is generally the content of the subject matter rather than the status of the party that determines whether a privacy interest exists and closure should be permitted. However, a privacy claim may be negated if the content of the subject matter directly concerns a position of public trust held by the individual seeking closure.
Fourth, before entering a closure order, the trial court shall determine that no reasonable alternative is available to accomplish the desired result, and, if none exists, the trial court must use the least restrictive closure necessary to accomplish its purpose.
Fifth, the presumption of openness continues through the appellate review process, and the party seeking closure continues to have the burden to justify closure. *531 This heavy burden is placed on the party seeking closure not only because of the strong presumption of openness but also because those challenging the order will generally have little or no knowledge of the specific grounds requiring closure.
Id. at 118-119. Although similar to the Lewis test, the Barron test permits the court to focus on the rights of the John Does rather than trying to analyze them in the context of the defendant's right to a fair trial.
As to the first factor in Barron, there is a presumption of openness in trial court proceedings. Filed records of court proceedings are public records. However, in both civil and criminal discovery proceedings, most discovery documents are not filed unless they are witness lists, depositions actually to be used at a pretrial hearing or trial, or other discovery actually being used in a trial proceeding. It is only through the application of the Public Records Act that unfiled criminal pretrial discovery information becomes available to the press. In Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775 (Fla. 4th DCA 1985), this court determined that, under the Public Records Act, once documents are released to the defendant, they become "public records" and thus are available to the public. Largely in response to this case, the legislature amended the statute in 1988 to provide for exceptions to prevent public disclosure of certain documents released to the defense. One exception is to prevent the release of information prior to trial which would be defamatory to the good name of a victim or witness, an exception which could apply here. See § 119.011(3)(c)5.a., Fla. Stat. (1989).
The second factor in Barron establishes the burden of proof on the proponent of closure. The trial court placed this burden on the John Does.
The third factor in Barron requires a review of applicable provisions of the constitution, statutes and court rules. The Florida Constitution has a strong right of privacy provision. Article I, Section 23 of the Florida Constitution provides:
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
The enactment of this strong right of privacy provision "ensures that individuals are able `to determine for themselves when, how and to what extent information about them is communicated to others.' A. Westin, Privacy and Freedom 7 (1967)." Shaktman v. State, 553 So.2d 148 (Fla. 1989). The supreme court continued, stating:
The right of privacy, assured to Florida's citizens, demands that individuals be free from uninvited observation of or interference in those aspects of their lives which fall within the ambit of this zone of privacy unless the intrusion is warranted by the necessity of a compelling state interest... . Because this power is exercised in varying degrees by differing individuals, the parameters of an individual's privacy can be dictated only by that individual. The central concern is the inviolability of one's own thought, person, and personal action. The inviolability of that right assures its preeminence over `majoritarian sentiment' and thus cannot be universally defined by consensus. Id. at 150-151.
The right of privacy has traditionally been applied to sexual intimacies conducted in a private setting. However, where those acts are violations of a criminal statute, the accused's rights of privacy in his non-public sexual acts would be inferior to the state's compelling interest in prosecuting crime. To that extent the information received from Kathy Willets cannot be considered shielded from the state and its ability to prosecute any and all John Does whom the state finds probable cause to have committed a crime. The state has not yet accused any of the John Does of participating in acts of prostitution. Therefore, we are not dealing here with the state's compelling interest in prosecuting crimes but in the public's access to information regarding individuals *532 who have not as yet been charged with any offense. Because the issues here deal with the most private of human interactions, I find that the right of privacy is implicated in this case, contrary to the finding of the trial court. That right is constitutionally subject to the public's right of access to public records.
The Public Records Act, Chapter 119 of the Florida Statutes, is the legislative direction regarding the public's access to governmental records. Active criminal intelligence or investigative materials are exempt from public disclosure until released to the defendant. However, the names and addresses of the defendant and victim of a crime are not considered protected information and are thus subject to disclosure, the only exemption being the disclosure of the names of victims of sexual battery, assault, or other sex crimes. § 119.011(3)(c)2, Fla. Stat. (1989). The statute also provides that criminal intelligence information shall be considered public documents, once released to defendants, with the exceptions as set forth in section 119.011(3)(c)5. That section allows the trial court to close certain information and exclude it from becoming public in nature where it is defamatory to a victim or witness or would jeopardize the safety of a victim or witness or would impair the state attorney in locating and prosecuting a codefendant.[2] In section 119.07(4), the legislature specifically recognizes the right of a court to close parts of a court file as an exception to the requirement of general access to public records. See Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d at 34. Not only does the legislature recognize that certain defamatory information may be excluded but it also sets as an "identifiable public purpose" for maintaining an exemption under the Act that the exemption "protects information of a sensitive personal nature concerning individuals, the release of which information would be defamatory to such individuals or cause unwarranted damage to the good name or reputation of such individuals or would jeopardize the safety of such individuals." § 119.14(4)(b)2, Fla. Stat. (1989). By allowing the court to exempt from public records treatment, information which may be defamatory in a criminal proceeding, the legislature has acted consistently with this identified public purpose and balanced legislatively the individual's privacy interests with the right of the public to be informed.
The press argues that only the custodian may assert an exemption to the Public Records Act, citing Tribune v. Cannella, and that here the state attorney has not sought to except any disclosure. As was noted earlier, however, Cannella did not deal with court proceedings, for which there are numerous exceptions in the Public Records Act. Also, the court on its own motion can restrict access to discovery and other materials pursuant to Florida Rule of Criminal Procedure 3.220. Furthermore, pursuant to that rule a defendant or even "any person" can request an in-camera inspection of materials. Fla.R.Crim.P. 3.220(m). Thus, matters can be closed in judicial proceedings without the assent of the custodian. See also Florida Newspapers, Inc. v. McCrary, 520 So.2d at 32. In addition, in Palm Beach Newspapers, Inc. v. Burk, the Court stated:
The often irrelevant and inadmissible evidence discovered during a deposition has the substantial potential of hazarding the right to a fair trial, the privacy rights of both parties and non-parties, and the *533 right to a trial in the venue of the alleged crime.
504 So.2d at 383. This review of the constitutional provisions, statutory provisions, court rules and case law convinces me that there is a strong policy established by the political institutions of the state to protect individuals from the release of sensitive defamatory information which will result in harm.
The Public Records Act states that the trial court "may" seal discovery documents which are defamatory, denoting that the trial court has discretion in this regard. Since there is an exemption only for information defamatory of a victim's or witness' good name, how do we factor the defamatory nature of the subject or the "good name" of the witness in these proceedings when (1) neither we nor the trial court knows who these John Does are[3]; and (2) we do not know that the information sought to be revealed is false; i.e., whether these John Does engaged in criminal acts. It would seem to me that in determining whether or not to close the information the trial court could properly consider the truth or falsity of the information and also what relation the victim or witness has to the crime charged. For instance, defamatory incidents in the personal history of a victim or witness may be entirely irrelevant to the crime being investigated or charged but such history makes it into investigative files. A trial court may prevent the release of such information. On the other hand, the acts of the "clients" and other persons who called upon Kathy Willets are so integrally related to the crime for which the defendants were charged that release may be justified despite its "defamatory" nature. The House Staff Analysis of SB 654, supra, n. 2, which authorized the exception states, "According to information provided by the State Attorney in the Eighteenth Judicial Circuit, this change is needed `because the public broadcast of details of victimization interferes unnecessarily with a person's right of privacy and has a chilling effect on the willingness of others to cooperate in the prosecution of criminal cases.'" It appears that the legislature was concerned with defaming victims and the state's witnesses, not potential codefendants as the John Does here must be characterized.
While their pleadings allege that some of the represented class of John Does never participated in acts of prostitution, all of the affidavits are sworn to as "John Doe". We cannot discern from any of the material which "John Does" may be completely innocent and which may be potential codefendants. I have not encountered another case like this, where the court is expected to act to protect parties whose identities are unknown, from disclosure of information which may or may not relate to the undisclosed parties. How can we say that the trial court abused its discretion under such circumstances?
I also note with some irony that the affidavits of the John Does all state "that the affiant is a victim and/or witness to relevant facts in the case at bar." While they may be witnesses, they are not "victims."[4] From a summary of the report of the Florida Supreme Court Gender Bias Study Commission, I quote the following:

Findings: Prostitution is not a victimless crime. .. . Both the pimps and the male clients seldom are prosecuted despite the fact that, by organizing and paying for the institution of prostitution, they are the more culpable parties.
.....
State attorneys exacerbate the discriminatory enforcement of prostitution laws by filing charges only against a prostitute, while frequently allowing her male client to go free after turning state's evidence.
Gender Bias in Florida's Justice System, 64 Fla.Bar J. 10 (May 1991).
*534 Another issue raised by the affidavits is the John Does' claim that they are all private individuals, not public figures, although at least one public official already has been named in the press as a client. While I concede that an argument could be made that one may not become a public figure simply by engaging in illegal activity before he is accused of the crime, see Dietemann v. Time Ins., 284 F. Supp. 925 (U.S.D.C.C.D.Calif. 1968), affirmed, 449 F.2d 245 (9th Cir.1971), how do we know that the John Does who signed the affidavits are not otherwise public officials, when they all sign their affidavits as "John Doe"? And if some of them are public officials or public figures, is not the public entitled to know whether they are engaging in acts which are contrary to the very laws which they may be sworn to uphold? These are all questions left unanswered by the lack of anything in the record to identify which John Does are affected and how they are affected. Without more, I too conclude that despite potential constitutional and statutory claims which might arise on a different set of facts, the trial court did not abuse his discretion, and the petition should be denied.
Clearly the John Does face a dilemma. Under Miami Herald v. Lewis, the news media is to be given notice of closure motions, and the hearing on the motion is open to the media. Yet to make the particularized showing necessary to sustain closure under section 119.011(3)(c)5 in a public hearing would defeat the very purpose for which the motion was brought. How the judicial system factors the rights of uncharged individuals into access to criminal proceedings by the public is a significant issue of constitutional and statutory interpretation.
NOTES
[1] I put this in quotes because that is how it is referred to in the court below. My concurrence is limited to what the trial court actually ordered to be disclosed, which were the names and addresses contained on that list. The petitioners claim that other very sensitive, very personal information is contained in the list. The trial court's order appropriately does not require the release of this information.
[2] The statute actually states that the trial court may order that certain information remain confidential "if it is found that the release of such information would, a) be defamatory to the good name of a victim or witness or would jeopardize the safety of such victim or witness; and b) impair the ability of a state attorney to locate or prosecute a codefendant." § 119.011(3)(c)5, Fla. Stat. (emphasis added). While the statute uses the connective "and", I conclude that it should be construed as an "or". See Winemiller v. Feddish, 568 So.2d 483 (Fla. 4th DCA 1990). Certainly when the state seeks closure of evidence, the state attorney does not want to have to prove both that release of sensitive information would impair the ability to locate a codefendant and also that it is defamatory or harmful to a victim or witness in order to close the proceeding. The legislative history also supports construing the "and" as an "or". See Staff of Fla.H.R.Comm. on Govtl. Ops. CS for HB 650 (1988) Final Staff Analysis at section I.B.
[3] The trial court saw the client list, but there is no indication in our record that anyone was told the identity of the individuals who were represented at the hearing and who filed the affidavits.
[4] Furthermore if they are "victims," then there is no exemption for the release of their names. See Fla. Stat. 119.011(3)(c)2.