PARKER, Chief Judge.
Roxanne Carnegie, who is the defendant and eounterelaimant in this civil action, files a petition for writ of certiorari challenging the trial court’s order granting the plaintiffs, Jeffrey Lee Tedder’s, motion to close the trial court file from inspection except to the attorneys of record, the trial court, and the members of the clerk’s office. We grant the petition and quash that order.
In December 1996, Tedder filed a complaint against Carnegie alleging malicious prosecution and extortion. Carnegie answered the complaint and filed a counterclaim against Tedder alleging assault, battery, false imprisonment, violation of civil rights of women, and intentional infliction of emotional distress. Thereafter, Tedder filed a motion for closure of the court file, alleging that Carnegie’s pleadings and other documents in the court file contained defamatory statements, that the parties are not public figures as defined by law, and that Tedder, and possibly other private citizens, would suffer irreparable damage. At the hearing on the motion, Tedder provided the court a sworn affidavit in support of the motion for closure which detailed his professional status and how his personal and professional reputation would suffer irreparable injury if the court file remained open. The trial court granted the motion for closure. The trial court expressed that the contents of the court file east the parties in such an unfavorable light that both parties would benefit from the closure order. Nevertheless, Carnegie chose to challenge that order.
Carnegie’s position is that Tedder’s motion for closure was procedurally improper because Tedder failed to give a copy of the notice of hearing to a representative of the press. Carnegie cites Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla.1982), and this court’s decision in Sarasota Herald-Tribune v. J.T.J., 502 So.2d 930 (Fla. 2d DCA 1987). Tedder responds that both Lewis and Sarasota Herald-Tribune were criminal cases, and that Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988), established the test for determining the propriety of closure in civil cases.
We recognize that Lewis does state that the news media must be given notice and an opportunity to be heard on the question of closure prior to a court’s decision. However, in Times Publishing Co. v. Russell, 615 So.2d 158, 158 (Fla.), cert. denied, 510 U.S. 943, 114 S.Ct. 381, 126 L.Ed.2d 330 (1993), the Florida Supreme Court stated that the Lewis decision was limited to establishing a three-prong test for determining whether the trial court was justified in closing a “criminal” proceeding. Because this case involves a civil proceeding, we conclude that the elements in Barron, which are now found in Florida Rule of Judicial Administration 2.051(c)9, should be applied to this ease. In Barron, the supreme court stated:
We conclude that the following factors must be considered to determine a request for closure of a civil proceeding.
First, a strong presumption of openness exists for all court proceedings. A trial is a public event, and the filed records of court proceedings are public records available for public examination.
Second, both the public and news media shall have standing to challenge any closure order. The burden of proof in these proceedings shall always be on the party seeking closure.
Third, closure of court proceedings or records should occur only when necessary (a) to comply with established public policy set forth in the constitution, statutes, rules, or case law; (b) to protect trade secrets; (c) to protect a compelling governmental *1312 interest [e.g., national security; confidential informants]; (d) to obtain evidence to properly determine legal issues in a case; (e) to avoid substantial injury to innocent third parties [e.g., to protect young witnesses from offensive testimony; to protect children in a divorce]; or (f) to avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of civil proceeding sought to be closed. We find that, under appropriate circumstances, the constitutional right of privacy established in Florida by the adoption of article I, section 28, could form a constitutional basis for closure under (e) or (f).... Further, we note that it is generally the content of the subject matter rather than the status of the party that determines whether a privacy interest exists and closure should be permitted. However, a privacy claim may be negated if the content of the subject matter directly concerns a position of public trust held by the individual seeking closure.
Fourth, before entering a closure order, the trial court shall determine that no reasonable alternative is available to accomplish the desired result, and, if none exists, the trial court must use the least restrictive closure necessary to accomplish its purpose.
Fifth, the presumption of openness continues through the appellate review process, and the party seeking closure continues to have the burden to justify closure. This heavy burden is placed on the party seeking closure not only because of the strong presumption of openness but also because those challenging the order will generally have little or no knowledge of the specific grounds requiring closure.
Barron, 531 So.2d at 118-19.
In applying Barron to this case, Ted-der argues that this court should look to subpart (f) of the third element to deny this petition. Subpart (f) provides: “[T]o avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of civil proceeding sought to be closed.” Id. at 118; see also Fla. R. Jud. Admin.2.051(c)(9)(A)(vi). Tedder argues that he has met that test. We disagree and conclude that the trial court’s order of closure departs from the essential requirements of the law.
As the supreme court recognized in Barron, “[p]ublic trials are essential to the judicial system’s credibility in a free society.” Barron, 531 So.2d at 116. Therefore, there must be a balancing test between the people’s interest in public courts and the personal interest in keeping facts private. That test hinges on whether there is reasonable expectation of privacy. See Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla.1985) (“Before a right of privacy is attached and the delineated standard applied, a reasonable expectation of privacy must exist”).
Historically, litigants have had no reasonable expectation of privacy with regard to trial proceedings and court files. See Barron, 531 So.2d at 120 (Ehrlich, J., concurring) (citing Forsberg v. Housing Authority, 455 So.2d 373, 375 (Fla.1984) (Overton, J., concurring)). Nevertheless, the Barron court did recognize some limited exceptions under which a privacy right may be asserted. One of those exceptions is subpart (f) to which Tedder looks in support of his argument.
Subpart (f) speaks to protected matters “not generally inherent in the specific type of civil proceeding sought to be closed.” Barron, 531 So.2d at 119. The language “not generally inherent” limits the scope of the exception to those matters that are peripheral to the litigation. Accordingly, in order to protect our respected system of open courts, litigants cannot have a reasonable expectation of privacy with regard to matters that are inherent to their civil proceedings.
In this case, Tedder initially filed suit against Carnegie. Only then did Carnegie file her counterclaim against Tedder. The statements Tedder alleged were defamatory and damaging were allegations in Carnegie’s counterclaim for which she seeks damages. These matters were not peripheral to the lawsuit; they were inherent to it. Accordingly, subpart (f) is not applicable to this case.
*1313 We grant the petition for certiorari and quash the order granting closure.
ALTENBERND and WHATLEY, JJ., concur.