520 So.2d 32 (1988)
FLORIDA FREEDOM NEWSPAPERS, INC., Petitioner,
v.
Robert L. McCRARY, Jr., Circuit Judge, Fourteenth Judicial Circuit, State of Florida, Respondent.
No. 69660.
Supreme Court of Florida.
February 11, 1988.
*33 Franklin R. Harrison and William A. Lewis of Sale, Brown & Smoak, Chartered, Panama City, for petitioner.
Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for respondent.
Richard J. Ovelmen, Miami, Laura Besvinick of Sharpstein & Sharpstein, P.A., Coconut Grove, Parker D. Thomson and Sanford L. Bohrer of Thomson, Zeder, Bohrer, Werth & Tazook, and Berald B. Cope of Greer, Homer, Cope & Bonner, P.A., Miami, amici curiae for The Miami Herald Pub. Co., The Florida Press Ass'n, The Florida Society of Newspaper Editors, and The Florida First Amendment Foundation.
C. Gary Williams and Michael J. Glazer of Ausley, McMullen, McGehee, Carothers and Proctor, Tallahassee, amicus curiae for Tallahassee Democrat, Inc.
SHAW, Justice.
We review Florida Freedom Newspapers Inc. v. McCrary, 497 So.2d 652 (Fla. 1st DCA 1986), to determine if the lower court correctly construed the first and sixth amendments of the United States Constitution. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The facts of the case are as follows. A newspaper in general circulation in Jackson County reported that prisoners in the county jail were being mistreated. The story was followed up by other media and papers and became a matter of public concern. In due course, two jailers with the Jackson County Sheriff's Department were charged with criminal mistreatment of prisoners. Both filed motions to control prejudicial pretrial publicity seeking two specific measures: first, orders preventing public disclosure of certain pretrial discovery information which was to be furnished to the two defendants by the state attorney's office under Florida Rule of Criminal Procedure 3.220; second, orders prohibiting public comment on the evidence and charges by members of the state attorney's office, defense counsel, members of the sheriff's department, potential witnesses, and various other individuals. After a hearing on the motions, the trial court entered an order granting, in part, the measures requested in the motions. Later, after an in-camera inspection of the discovery materials, the trial court entered orders prohibiting the release of existing discovery materials and future discovery materials pending an in-camera inspection. Concerning the requested prohibition on comment, the trial court found the request to be too broad and limited the prohibition to comments by the state attorney's office and sheriff's department. The orders were based on findings that the discovery material was graphically incriminating, containing materials which might not be admissible at trial, and that the prosecutor, sheriff, and other persons had made public statements prejudicial to the defendants. The trial court made clear that it was not prohibiting the publication of any information in the possession of the press or which might come into its possession, and that it was not closing any judicial proceedings to the press or public. The trial court noted that the defendants had asserted their right to be tried in Jackson County and concluded that no alternative measures were available to the court which would safeguard the defendant's rights to a fair trial by an impartial jury. On petition for certiorari review, the district court found no departure from the essential requirements of law and incorporated the operative portions of the orders into its opinion. For the reasons which follow, we approve the decision below.
We have reviewed and considered briefs from petitioner and from amici curiae, The Tallahassee Democrat, The Miami Herald Publishing Company, The Florida Press Association, The Florida Society of Newspaper Editors, and The Florida First Amendment Foundation. We address each of the three arguments presented by petitioner and amici (collectively, the press).
Chapter 119, Public Records, Florida Statutes (1985), establishes a state policy *34 that government records, with specific exceptions, should be open at all times to the public. Section 119.011(3)(b) provides an exception whereby "criminal investigative information" developed for the prosecution of criminal defendants will not be accessible to the public until such time as the information is given, or required by law or agency rule to be given, to the accused. The pretrial discovery information at issue falls into this latter category of public records, which is available to the press and the public. In Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979), we held that the judiciary should not create public policy exemptions beyond those specified by the legislature. Accord City of North Miami v. Miami Herald Publishing Co., 468 So.2d 218 (Fla. 1985); Rose v. D'Alessandro, 380 So.2d 419 (Fla. 1980). Based on this case law and chapter 119, the press takes an absolutist position. First, it argues, the defendants here have no standing to request that the public records at issue be temporarily sealed. The notion that a defendant has no standing to assert a constitutional right to a fair trial through a motion to control prejudicial pretrial publicity is meritless. Second, the press argues, the trial court has written a new exception into chapter 119 which, in the press's view, is beyond the authority of the judicial branch. We disagree for two reasons. First, we do not regard the trial court's action in temporarily denying public access to pretrial discovery material until a jury could be selected and sequestered as creating an "exception" to chapter 119. In section 119.07(4) the legislature recognized that there would be occasions where court files containing public records would nevertheless be closed to the public by order of the court.
(4) Nothing in this section shall be construed to exempt from subsection (1) a public record which was made a part of a court file and which is not specifically closed by order of court except as provided in paragraphs (e), (f), (g), (m), (o), and (r) of subsection (3). (Emphasis supplied.)
The legislature has created the rule and the exceptions, including the court ordered exception. Our refusal in Wait, City of North Miami, and Rose to create as a matter of public policy the particular exceptions at issue does not mean that there may not be instances where orderly court procedures or a respect for constitutional rights require that court files be closed. Second, under the separation of powers doctrine, it is the responsibility of the judicial branch to ensure that parties receive a fair trial. In the case of a criminal defendant, the right to a fair trial includes the right to an impartial jury in the county where the crime was allegedly committed. The United States Supreme Court has characterized the right to a fair trial as the most fundamental of all freedoms and one which must be preserved at all costs. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Moreover,
[t]o safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. Sheppard v. Maxwell, [384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)] supra. And because of the Constitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary.
Gannett Co. v. DePasquale, 443 U.S. 368, 378, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979). Accord Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378, 380 (Fla. 1987) ("where a defendant's right to a fair trial conflicts with the public's right of access, it is the right of access which must yield"); Bundy v. State, 455 So.2d 330, 338 (Fla. 1984) (a balancing test between the right of public access and a defendant's right to a fair trial must be applied so as to recognize the weightier considerations of the defendant). If, as the press urges, chapter 119 was read and applied so as to violate the constitutional separation of powers doctrine or the right to a fair trial, we would be obliged to declare the statute unconstitutional. Instead, we hold that when correctly interpreted and applied there is no conflict between the statute and the constitutional authority of the judicial branch to *35 take such measures as are necessary to obtain orderly proceedings and a fair trial.
The trial court based its orders temporarily closing the pretrial discovery materials to the public on Florida Rule of Criminal Procedure 3.220(h), which authorizes protective orders restricting or deferring disclosures for cause. In concluding that there was cause, the trial court determined that there had been prior prejudicial publicity, that public disclosure of the discovery material would further aggravate the prejudicial publicity, and that the only measure available to the court until a jury could be selected and sequestered was to cut off the prejudicial publicity at its source before the discovery information became known to the press and public. In short, in determining cause, the court considered the factors contained in the three-prong test of Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982). The district court here held that a showing of cause was sufficient and it was not necessary to formally apply the three-prong test. The press argues that constitutional rights of a free press were involved and that a showing of cause was insufficient to abridge those rights. We agree only in part with this argument. In Burk, relying on Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), we explicitly rejected the proposition that the press or public had a first amendment right of access to discovery procedures and the information developed therein. The reasons underlying that decision are set forth in Burk and Seattle Times and will not be repeated here. Unlike Burk, the material here reached the status of a public record and it is necessary to determine what standard will apply in determining cause to temporarily seal public judicial records. A finding of cause to restrict or defer disclosure of such records cannot rest in air, it must be a conclusion reached after considering relevant factors. As the present case illustrates, these factors are essentially the same as those set out in the three-pronged Lewis test. This is not surprising since both Lewis and the case here address the issue of restricting public access to what would normally be accessible to the public. Accordingly, we hold that the factors set out in Lewis are relevant to a finding of cause and should be considered in determining whether public access to a judicial public record should be restricted or deferred. We find no error here because the trial judge properly considered all relevant factors.
The press's final point concerns the prohibition of public comment by the state attorney's office and the sheriff's department. We note, first, that, even in the absence of a court order, prosecutors and defense counsel as officers of the court are severely restricted from making extrajudicial statements which might prejudice a fair trial. Moreover, prosecutors and defense counsel have a duty of reasonable care to prevent investigating employees, or other persons assisting in or associated with the case, from making extra judicial statements prejudicial to a fair trial. Rule 4-3.6, Rules Regulating The Florida Bar.
The press attempts to equate the order prohibiting comment to a prior restraint on publication or broadcast. Having performed this leap in logic to its own satisfaction, the press then argues that the order prohibiting comment does not meet the stringent criteria for prior restraint. This argument fails at the very threshold. Prior restraint is a term of art which is customarily applied to orders prohibiting publication or broadcast of information already in the possession of the press. See Nebraska Press Assoc. v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Prohibition on comment is an acceptable alternative to prior restraint. As the court said in Nebraska Press,
This Court has outlined other measures short of prior restraints on publication tending to blunt the impact of pretrial publicity. See Sheppard v. Maxwell, supra [384 U.S.] at 361-362 [86 S.Ct., at 1521-1522]. Professional studies have filled out these suggestions, recommending that trial courts in appropriate *36 cases limit what the contending lawyers, the police, and witnesses may say to anyone. See American Bar Association Project on Standards for Criminal Justice, Fair Trial and Free Press 2-15 (App.Draft 1968).
427 U.S. at 564, 96 S.Ct. at 2805 (footnote omitted). This reaffirmed what the Court had earlier said in Sheppard regarding preventive measures to be taken where prejudicial publicity threatens to impair the right to a fair trial.
[T]he cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures.
384 U.S. at 363, 86 S.Ct. at 1522. See also Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) (the first amendment does not guarantee the press a constitutional right of special access to information not available to the public); Zemel v. Rusk, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.")
In support of its argument that prohibition on comment is a prior restraint, the press cites CBS Inc. v. Young, 522 F.2d 234 (6th Cir.1975). We have read CBS Inc. carefully and cannot identify the basis for the court's naked assumption that prohibition on comment is a prior restraint as that term is used in controlling case law. In our view, CBS, Inc. is contrary to Sheppard and Nebraska Press and in any event is not controlling. The better view is expressed in Central South Carolina Chapter, Society of Professional Journalists v. Martin, 431 F. Supp. 1182 (D.S.C.), aff'd 556 F.2d 706 (4th U.S.C.A. 1977), cert. denied, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978), where the Court rejected CBS Inc. and the equation drawn therein between prior restraint and prohibition of prejudicial comment.
Although the trial court was asked to prohibit comment by witnesses, it chose not to do so. The names of the potential witnesses were disclosed and the press was free to interview the sources of the pretrial discovery material at issue here. Based on the availability of the witnesses, the press argues that the trial court's actions in temporarily sealing the discovery material was a useless act which would not accomplish the purpose of the court orders. We disagree. Potential witnesses are subject to compulsion in discovery proceedings. This same compulsion does not apply to the press interviews. As we pointed out in Burk, compulsory discovery rules are for the benefit of the parties and the judicial process. Transforming these rules into a device for information gathering by the press would subvert the purpose of discovery.
In summary, there is no first amendment right of access to pretrial discovery material. There is in Florida a statutory right of access to such material when it becomes a public record, but that statutory right must be balanced against the constitutional rights of a fair trial and due process. There is no constitutional impediment to a court prohibiting prosecutors, defense counsel, witnesses, and other interested parties involved in the case before the court from making prejudicial pretrial comments which are intended for publication.
We approve the decision below.
It is so ordered.
McDONALD, C.J., and OVERTON, ERHLICH, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only with an opinion.
BARKETT, Justice, concurring in result only.
I agree that the Lewis test should be used in determining when to restrict access to pretrial discovery materials that have *37 attained the status of public records. Although it is not clear on this record that the trial court explicitly applied this test, the record of the hearing indicates that Lewis was fully discussed at the hearing and considered by way of analogy. Moreover, the state presented sufficient evidence to support the trial court's findings, which thus should not be disturbed by this Court.
I also agree that the trial court may impose carefully tailored restraints on its officers, the litigants and witnesses of a pending trial. State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 910-11 (Fla. 1976). A court under the sixth amendment and article I, section 16 of the Florida Constitution can and should control the release of information within its jurisdiction that could prejudice a pending criminal trial.
I write separately to comment on the majority's statement that "[p]rohibition on comment is an acceptable alternative to prior restraint." Majority opinion, at 35. My concern is the possible inference that speech in the form of "comment" is afforded a significantly lesser constitutional protection than publication via the press. I do not believe this to be so and note that the United States Supreme Court clearly has put both in the same category:
[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.
Nebraska Press Association v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976) (emphasis added). While restrictive orders unquestionably are permissible within certain limits, the United States Supreme Court has not made any distinction between "restrictive orders" and "prior restraints." Indeed, it has used the terms interchangeably, see Nebraska Press, 427 U.S. at 556, 96 S.Ct. at 2801, and focuses, instead, on balancing free expression against competing interests in the particular context in question.