612 So.2d 549 (1992)
POST-NEWSWEEK STATIONS, FLORIDA INC., The Miami Herald Publishing Company, News and Sun-Sentinel Company, and NBC Subsidiary (WTVJ-TV), Inc., Petitioners/Cross-Respondents,
v.
John DOE, et al., Respondents/Cross-Petitioners.
No. 78915.
Supreme Court of Florida.
November 25, 1992.
Rehearing Denied February 16, 1993.
Parker D. Thomson of Thomson, Muraro & Razook, P.A., Sanford L. Bohrer of Bohrer & Aprill, P.A., Karen Williams Kammer of Jenner & Block, Jerold I. Budney, Associate Gen. Counsel, The Miami Herald Pub. Co., Miami, and Ray Ferrero, Jr. and Joanne Fanizza of Ferrero & Middlebrooks, Ft. Lauderdale, for petitioners/cross-respondents.
Richard L. Rosenbaum of the Law Offices of Richard L. Rosenbaum, Fort Lauderdale, and Mark King Leban of the Law Offices of Mark King Leban, Miami, for respondents/cross-petitioners.
McDONALD, Justice.
We review Doe v. State, 587 So.2d 526, 528-29 (Fla. 4th DCA 1991), in which the district court certified the following questions:
1. IN A CRIMINAL PROCEEDING CHARGING A DEFENDANT WITH PROSTITUTION, DOES A NON-PARTY WHO CLAIMS A RIGHT OF PRIVACY IN DOCUMENTS HELD BY THE STATE ATTORNEY AS CRIMINAL INVESTIGATIVE INFORMATION HAVE STANDING TO SEEK AN ORDER OF THE TRIAL COURT WHICH WOULD DENY THE PUBLIC AND THE PRESS ACCESS TO EVIDENCE REVEALING NAMES OF THE DEFENDANT'S CLIENTS WHEN PURSUANT TO THE DEFENDANT'S DISCOVERY MOTION THE STATE IS PREPARED TO DELIVER SAID EVIDENCE *550 TO THE DEFENDANTS AS REQUIRED BY FLORIDA RULE OF CRIMINAL PROCEDURE 3.220 AND WHICH UPON DELIVERY WOULD OTHERWISE RENDER THEM `PUBLIC RECORDS' PURSUANT TO BLUDWORTH V. PALM BEACH NEWSPAPERS, INC., 476 So.2d 775 (FLA. 4TH DCA 1985), REV. DENIED, 488 So.2d 67 (FLA. 1986)?
2. IN A CRIMINAL PROCEEDING CHARGING A DEFENDANT WITH PROSTITUTION, DOES THE TRIAL COURT ABUSE ITS DISCRETION UNDER SECTION 119.011(3)(c)5 OF THE PUBLIC RECORDS ACT IN DENYING CLOSURE OF DISCOVERY DOCUMENTS WHERE AN UNNAMED THIRD PARTY CLAIMS THAT RELEASE OF SUCH INFORMATION WOULD BE DEFAMATORY TO HIM AND WOULD INVADE HIS RIGHT OF PRIVACY BOTH UNDER THE ACT, ARTICLE I, SECTION 23 OF THE FLORIDA CONSTITUTION AND THE FEDERAL CONSTITUTION, AND THE TRIAL COURT FINDS THAT RELEASE OF THE INFORMATION WILL HARM THE THIRD PARTY?
We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We answer the first question in the affirmative and under the facts of this case answer the second question in the negative and approve the decision of the district court.
In July 1991, the Broward County Sheriff's Office investigated allegations that Kathy Willets and her husband, Deputy Sheriff Jeffrey Willets, were involved in a criminal prostitution scheme. On July 23, 1991, the police obtained a search warrant and searched the Willets' home. Various pieces of evidence were seized, including cassette tapes containing recorded telephone conversations, business cards of alleged customers of Kathy Willets, a Rolodex containing names and addresses, and other lists stating the names, amounts paid, and sexual notations regarding her customers.
The state charged Kathy Willets with one count of prostitution, Jeffrey Willets with one count of living off the proceeds of prostitution, and charged both with illegal wiretapping. On August 31, 1991, the Willets filed a discovery request under rule 3.220 of the Florida Rules of Criminal Procedure asking the state to turn over all of the material seized from their home, including the documents identifying the John Does. Numerous John Does, styled as interested parties/witnesses, filed a motion in the trial court to deny public access to pretrial discovery materials.[1] The trial court denied the Does' motion and declared that, once the state attorney provided the discovery documents to the Willets, the documents became records available for public inspection. When the state announced that it was prepared to disclose the material in its possession as required by rule 3.220, the Does moved for a stay of release of the discovery materials. The trial judge concluded that people named on the "client list" of a prostitute have no reasonable expectation of privacy as to their identity and ordered the release of the names and addresses contained in the documents. He reserved ruling, subject to an in-camera review, on whether other material or information should be released. The district court subsequently stayed the order, affirmed the trial court's decision, and certified the questions.
Pursuant to rule 3.220(m), the Does have standing to challenge the release of the discovery materials.[2] Rule 3.220(m) provides that "[u]pon request of any person, the court may permit any showing of *551 cause for denial or regulation of disclosures, or any portion of such showing to be made in camera." (Emphasis added). In addition, rule 3.220(l) allows the court to restrict disclosure to protect a witness from "harassment, unnecessary inconvenience or invasion of privacy." Even though the Does are not parties named in the state's criminal action against the Willets, the broad language of rule 3.220 permits them to show cause for denying the disclosure of the discovery information at issue in the criminal proceeding. Therefore, we answer the first certified question in the affirmative.
Our answer to the second certified question requires us to analyze the discovery information under the rubric of the rules of criminal procedure, the public records law, and the right to privacy. Rule 3.220 requires the state to disclose to the defendant, upon request, any tangible papers or objects which were obtained from or belonged to the accused. The state, which takes no position on the issue in this case, was prepared to comply with the Willets' discovery request when the Does sought a stay in the trial court. The media contends that the Public Records Act establishes a statutory right of access to the pretrial discovery information. The Does, on the other hand, argue that disclosure of the discovery information will violate their right of privacy and that the information should be exempted from the disclosure requirements of the public records law, chapter 119, Florida Statutes (1989).
Florida law clearly expresses that it is the policy of this state that all government records, with particular exemptions, shall be open for public inspection. § 119.01. Subsection 119.011(3)(c) provides an exemption for criminal investigative information developed for the prosecution of a criminal defendant. Pursuant to the statute, such information will not be accessible to the public until the information is given or required by law or agency rule to be given to the accused. § 119.011(3)(c)(5). Rule 3.220 requires the state to turn over the discovery information to the defendant. In Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32 (Fla. 1988), we stated that, once the state gives the requested information to the defendant, pretrial discovery information attains the status of a public record. However, McCrary qualified the statutory right of access to public records by balancing it against the constitutional rights of a fair trial and due process. Id. at 36. Here, we also qualify the public's statutory right of access to pretrial discovery information by balancing it against the Does' constitutional right to privacy.
The Does bear the burden of proving that closure is necessary to prevent an imminent threat to their privacy rights. Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla. 1988); Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982). The media argue that the Does have failed to satisfy the three-pronged test articulated in Lewis, and, therefore, they have failed to carry their burden to justify closure. Under Lewis, the party seeking closure must prove the following:
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than a change of venue, which would protect the defendant's right to a fair trial; and,
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
Id. at 6. The Lewis test balances a criminal defendant's rights to a fair trial against the public's right to disclosure in pretrial proceedings. We conclude, however, that the Lewis test is not applicable to the balancing of interests in the instant case. First, the Lewis test does not address the impact of public disclosure on a third party's right of privacy. Unlike the defendant in Lewis, the John Does have not been charged with any crime. Second, Lewis dealt with the closure of a pretrial hearing, not with the closure of pretrial discovery documents that are at issue in this case.
*552 The more appropriate standard that we choose to apply in the instant case was set forth by this Court in Barron:
[C]losure of court proceedings or records should occur only when necessary (a) to comply with established public policy set forth in the constitution, statutes, rules, or case law; (b) to protect trade secrets; (c) to protect a compelling governmental interest [e.g., national security; confidential informants]; (d) to obtain evidence to properly determine legal issues in a case; (e) to avoid substantial injury to innocent third parties [e.g. to protect young witnesses from offensive testimony; to protect children in a divorce]; or (f) to avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of civil proceeding sought to be closed.

531 So.2d at 118 (emphasis supplied). The media oppose application of the Barron test because that case involved a common law right of access to judicial records rather than a statutory right of access. However, whether public access is afforded via a common law right or a statutory right, both the goals of opening government to public scrutiny and simultaneously protecting individuals from unwarranted government intrusion are served by application of the Barron standard.
Barron recognized that "it is generally the content of the subject matter" that determines whether a privacy interest exists that might override the public's right to inspect the records. Id. The Does assert that the materials at issue include intimate information relating to genital size and sexual performance. Although documents containing such information were seized from the Willets' home, the trial court limited its order to the release of only the names and addresses on the state's witness list. Therefore, the matter we address here is limited strictly to the names and addresses contained on the same list.[3]
According to the Does' reasoning, Florida's constitutional right to privacy protects them from having their names and addresses released to the public:
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Art. I, § 23, Fla. Const. Since its adoption by the voters of Florida in 1980, the privacy amendment has provided the basis for protecting several types of information and activities from public disclosure. In re T.W., 551 So.2d 1186 (Fla. 1989) (woman's decision of whether to continue her pregnancy); Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla. 1987) (confidential donor information concerning AIDS-tainted blood supply); Florida Board of Bar Examiners re: Applicant, 443 So.2d 71 (Fla. 1983) (bar application questions concerning disclosure of psychiatric counseling). The privacy amendment has not been interpreted to protect names and addresses contained in public records, and we reject the Does' suggestion that the privacy right should be extended that far based on the facts of this case. The Does in the instant case had their names and addresses associated with a criminal prostitution scheme. Any right of privacy that the Does might have is limited by the circumstances under which they assert that right. See Florida Board of Bar Examiners, 443 So.2d at 74. The circumstances here do not afford them such a right. Because the Does' privacy rights are not implicated when they participate in a crime, we find that closure is not justified *553 under Barron.[4]
Even though the names and addresses of people on the witness list of a criminal prosecution may be disclosed to the public, we emphasize that the public does not have a universal right to all discovery materials. Depending on the circumstances and the subject matter, discovery may "seriously implicate privacy interests of litigants and third parties." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984). The purposes of criminal discovery are to narrow the issues of the case, to ascertain facts that will be relevant at trial, and to avail the parties of information that will avoid surprise tactics in the courtroom. State v. Tascarella, 580 So.2d 154 (Fla. 1991). Discovery is not intended to be a vehicle for the media to use in its search for newsworthy information. This Court is wary of an outcome that will cause victims and witnesses to withhold valuable discovery information because they fear that personal information will be divulged without discretion. However, we also recognize that this state's open government policy requires that information be available for public inspection unless the information fits under a legislatively created exemption.[5]Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979).
We are confident that the in-camera proceeding conducted by the trial judge protects any privacy interests of third parties like the John Does. The purpose of the in-camera inspection is to balance the privacy interests of the parties with the public's need to know the information. State v. Burns, 830 P.2d 1318 (Mont. 1992). In addition to lending credence to the trial court's decision whether to release the information, the in-camera inspection also "helps dispel any cloud of public suspicion that might otherwise be suspended over governmental efforts to sustain secrecy sua sponte." Tribune Co. v. Public Records, 493 So.2d 480, 484 (Fla. 2d DCA 1986), review denied, 503 So.2d 327 (Fla. 1987).
We hold that the trial judge did not abuse his discretion in concluding that the Does lacked a privacy interest in their names and addresses. Although the trial judge did not make a finding as to whether release of the information would be defamatory to the good name of a victim or witness,[6] our conclusion that the Does do not have a privacy interest in their names and addresses negates the need for such a factual determination.
For the reasons stated, we find that the Does have failed to show good cause for prohibiting the disclosure of the names and addresses on the witness list. We therefore approve the district court's decision affirming the trial court's order.
It is so ordered.
*554 OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs with an opinion.
KOGAN, J., dissents with an opinion.
BARKETT, Chief Justice, concurring.
I concur with the Court's holding that a full and proper in camera review should be sufficient to protect third parties against violations of their constitutional right to privacy and, to the extent that they fall within the scope of section 119.011(3)(c)(5)(a), Florida Statutes (1989), to enforce their statutory right against defamatory disclosures.
KOGAN, Justice, dissenting.
In many years as a trial judge I personally had the opportunity to see a large number of cases in which unfounded innuendo, malicious gossip, and irrelevant speculation about private lives found their way into the State's discovery materials. There may be a case for allowing public access to such materials when they only affect the parties to the proceeding itself, public figures, or persons actually charged with a related crime. But the same conclusion is far less supportable when the material affects private persons who are not parties to the proceeding and are not charged with criminal wrongdoing.
The various John Does in this case are not presently charged with any crime. For all we know, any information about them now in the State's possession may be unfounded, distorted, or even contrived. There has been no information or indictment issued against them. That being the case, I cannot conclude that the public records laws ever were meant to subject at least some of these John Does to public scrutiny of their private lives. People have a constitutionally protected interest in their good names. Art. I, §§ 2, 9, Fla. Const.; see, e.g., Ritter v. Board of Comm'rs, 96 Wash.2d 503, 637 P.2d 940 (1981).
The Florida Constitution recognizes that people cannot be stripped of such an interest without good and just reason. Art. I, § 9, Fla. Const. We have recognized, as the majority notes, that the public records laws themselves allow courts to order that discovery documents be withheld if this is the only way to preserve other constitutional rights. Florida Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32 (Fla. 1988).
For these reasons, I dissent from the majority's analysis and conclusion. I would remand to the trial court for a determination of whether there is any legitimate public concern in the names, addresses, and other information contained in the State's discovery materials as to each John Doe. I strongly doubt that any legitimate public concern would exist with regard to private individuals not charged with a crime, although there could be a legitimate public interest if any of the material reflects on public figures or persons actually charged with a crime arising from this or a related case.
I am especially troubled by the majority's tacit assumption that people's interest in their good names evaporates merely because of unfounded, unproven, and possibly erroneous information that they have participated in criminal activity. Majority op. at 552-53. At the very least, I believe that private individuals have a right to require the State at least to commence a criminal prosecution against them before it can release scandalous material the State itself has collected alleging criminal wrongdoing. In effect, the majority authorizes the State to brand such persons as criminals without even offering them the procedural protections guaranteed by our Constitution or a forum for vindication. This is a process more reminiscent of Nathaniel Hawthorne's scarlet letter than modern constitutional law.
I also emphasize that the right to one's good name does not provide any basis for a person to refuse a lawful summons to appear at a deposition or testify at a trial. Rather, the right prohibits the news media and others from using a state-created method of gathering information as a means of prying into the personal lives of private individuals or of transforming unsubstantiated rumor into tabloid headlines. The State's own use of that information in *555 a lawful proceeding is another matter altogether, because the State's interest in enforcing its laws and investigating crime is compelling.
NOTES
[1] Five John Does initially submitted sworn affidavits in support of their motions for closure. The affidavits asserted that the affiants were "private" individuals and that release of the information would be defamatory to the Does' personal and professional reputations. All of the affidavits were identical in form and content, except for one which adds a paragraph stating that he sent a letter and his business card to Kathy Willets and spoke to her on the telephone, but claiming that he did not "meet Kathy Willets, travel to her house, or engage or attempt to engage in any illegal activity with her." Affidavit of John Doe, August 19, 1991.
[2] The media conceded the Does' standing during oral arguments.
[3] Because the trial court has not conducted an in-camera review of any information other than the names and addresses and because the trial court has not ruled on the disclosure of any other information, we do not address whether that information should be released. However, we note that the details of an individual's life dealing with noncriminal intimate associations fall within a protected zone of privacy. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
[4] In Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla. 1987), an AIDS victim served a subpoena on a blood donor organization requesting the names and addresses of blood donors who may have been the source of his disease. We held that the privacy interests of the blood donors and society's interest in maintaining a strong volunteer blood donation system outweighed the victim's interest in obtaining the information. Therefore, the victim was not entitled to the donors' names and addresses. Although the instant case involves the release of names and addresses, Rasmussen differs in two significant aspects. First, Rasmussen did not involve records subject to chapter 119, Florida Statutes (1989). Second, the instant case does not involve a policy consideration like that of protecting the blood donor system in Rasmussen.
[5] For example, the legislature has chosen to exclude the following types of information from public inspection: communications between state employees and personnel in state agencies' employee assistance programs for substance abuse and other disorders, § 119.07(3)(b); examination answers of applicants for admission to The Florida Bar, § 119.07(3)(c); active criminal intelligence information and active criminal investigative information, § 119.07(3)(d); the identity of a victim of a sexual offense, § 119.07(3)(h); a criminal defendant's confession, § 119.07(3)(m); the work-product of an attorney representing a government agency or officer during the pendency of adversarial proceedings, § 119.07(3)(n); and "all public records which are presently provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law," § 119.07(3)(a).
[6] Section 119.011(3)(c)(5), Florida Statutes (1989), provides an exemption from disclosure for documents that would "be defamatory to the good name of a victim or witness or would jeopardize the safety of such victim or witness."