691 So.2d 532 (1997)
WESH TELEVISION, INC., d/b/a WESH Channel 2, et al., Petitioners,
v.
Hon. Thomas G. FREEMAN, Circuit Court Judge, etc., et al., Respondents.
No. 96-3572.
District Court of Appeal of Florida, Fifth District.
April 4, 1997.
*533 David L. Evans of Mateer & Harbert, P.A., Orlando, for Petitioners.
No Appearance for Respondent Hon. Thomas G. Freeman.
Robert A. Butterworth, Attorney General, and Louis F. Hubener, Assistant Attorney General, Tallahassee, for Respondents State of Florida and Norman R. Wolfinger.
David A. Wasserman, Winter Park, for Respondent George Leslie Crossley, Jr.
ANTOON, Judge.
WESH Television, Inc., d/b/a WESH Channel 2, Sentinel Communications Company, and reporter Dave McDaniel (the media) seek review of a trial court order barring the media's access to audio and video tapes which constitute discovery in a criminal case.[1] We quash the order.
The state has charged George Leslie Crossley, Jr., with solicitation to commit murder and solicitation to commit arson. As a part of the investigation of these charges, the state made audio and video tapes of conversations Crossley had with an undercover agent of the Bureau of Alcohol, Tobacco and Firearms, who was pretending to be a "hit man." During these conversations, Crossley allegedly solicited the agent to commit murder and arson. Copies of these tapes were surrendered to Crossley pursuant to Florida Rule of Criminal Procedure 3.220.
After the tapes were delivered to Crossley, the media requested copies of the tapes pursuant to section 119.07(1)(a), Florida Statutes (1995). Crossley responded by filing a motion for protective order, asserting that disclosure of the tapes would generate publicity which would prejudice his right to receive a fair trial. Crossley provided the media with a notice of the hearing on the motion. The state then moved for a determination of whether the tapes were public records and, if so, whether the tapes were exempt from disclosure. Prior to the hearing on these motions, the media moved to intervene.
Notwithstanding the motion to intervene and the presence of its counsel at the hearing on the motion for protective order, the media was precluded from participating in the hearing. The hearing began with Crossley asserting that the release of the tapes to the media would result in pretrial publicity, thereby effectively depriving him of a fair trial in Seminole County, the county in which the crime allegedly occurred. When the trial court asked for a response, the state suggested that the media be permitted to respond because the state's opposition to disclosure was based on grounds other than those raised by Crossley. The trial court rejected the state's suggestion, stating that it had not granted the media permission to intervene. The state then acknowledged Crossley's concerns. No evidence was presented by either Crossley or the state.
After considering the arguments of counsel, the trial court granted the motion for protective order. The attorney for the media then requested permission to be heard. The trial court reminded the attorney that the media had not yet been allowed to intervene and thereupon asked Crossley if he objected to the media's intervention. Crossley responded that he had no objection, but that the issue of the media's access to the tapes was moot because the trial court had already granted the protective order; the state agreed. The trial court then granted the media's motion to intervene, but announced *534 that it would not allow the media to argue the issue.
The media thereafter filed a motion to vacate the protective order. A hearing was conducted during which Crossley reiterated his concerns regarding the publicity which would be generated by the release of the tapes to the media and its prejudicial impact upon his right to receive a fair trial. The state agreed with the media that the tapes were public records, but again registered concerns regarding the pretrial publicity the tapes would likely generate. The media insisted that it was entitled to have been heard at the hearing on the motion for protective order and, moreover, that the trial court could not properly bar its access to the tapes without first weighing evidence in compliance with Miami Herald Publishing Company v. Lewis, 426 So.2d 1 (Fla.1982). The trial court denied the motion to vacate, stating that Lewis does not apply when records, as opposed to hearings, are sought to be closed. The media now challenges this ruling.
Florida has a strong policy favoring open government. Pursuant to that policy, all governmental records, with certain limited exceptions, are open for public inspection. § 119.01, Fla. Stat. (1995). One of the exceptions to this rule applies to information gathered by the state in its investigation against a criminal defendant. § 119.011(3)(c), Fla. Stat. (1995). Pursuant to section 119.011(3)(c)5, Florida Statutes (1995), such information is not open to the public until the state gives or is required to give it to the defendant. Once the information is delivered to the defendant, the information attains the status of a public record. Florida Freedom Newspapers, Inc., v. McCrary, 520 So.2d 32 (Fla.1988).
In the instant case, the tapes had been turned over to Crossley during discovery, and therefore, they were clearly public records subject to disclosure under Chapter 119. However, this fact alone is not dispositive because section 119.07(5), Florida Statutes (1995), authorizes the trial court to close a public record which is a part of a court file. In fact, trial courts have the affirmative constitutional duty to invoke this provision in order to close a public record if closure is necessary to manage the effects of prejudicial pretrial publicity.
In trying high profile criminal cases, trial courts are often called upon to balance the statutory right of the press to have access to public records against the Sixth Amendment rights of the defendant to receive a fair trial. The right to receive a fair trial includes the right to obtain an impartial jury in the county where the crime was allegedly committed. McCrary, 520 So.2d at 34. When the defendant's right to receive a fair trial conflicts with the media's statutory right to access, it is the media's right to access which must yield. Palm Beach Newspapers, Inc. v. Burk, 504 So.2d 378, 380 (Fla.), cert. denied, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987).
In Miami Herald Publishing Company v. Lewis, 426 So.2d 1 (Fla.1982), our supreme court adopted a three-pronged test by which the trial courts can best "balance between the need for open government and public access, through the media, to the judicial process, and the paramount right of a defendant in a criminal proceeding to a fair trial before an impartial jury." The test imposes the following requirements before sanctioning the closure of a pretrial criminal hearing:
1. Closure is necessary to prevent a serious and imminent threat to the administration of justice;
2. No alternatives are available, other than change of venue, which would protect a defendant's right to a fair trial; and
3. Closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose.
Id. at 7. The three-pronged test contemplates an evidentiary hearing. At the hearing, the party seeking closure has the burden of proving by the greater weight of the evidence that closure is necessary to prevent a serious and imminent threat to the administration of justice. The media, in its role as public surrogate, must be given notice of the hearing as well as an opportunity to be heard on the question of closure. The trial court *535 should not grant a motion to close the hearing absent a showing of widespread adverse publicity. In ruling, the court must determine if there is a serious and imminent threat that publication will preclude the fair administration of justice and make findings of fact relevant thereto. Lewis, 426 So.2d at 8.
We are troubled by the trial court's refusal to allow the media to participate in the hearing on Crossley's motion for protective order despite the fact that the media had filed a motion to intervene and was present at the hearing. Its view that the requirements of Lewis do not apply to the denial of the media's access to public records is erroneous. In McCrary, our supreme court held that the factors in Lewis "should be considered in determining whether public access to a judicial public record should be restricted or deferred." 520 So.2d at 35. In our view, this contemplates a hearing on the motion to restrict access in which the media has an opportunity to participate and present evidence. Only after such a hearing may the court enter an order limiting access to judicial public records. The court in McCrary also pointed out that such a ruling "cannot rest in air," but rather, "must be a conclusion reached after considering relevant factors." 520 So.2d at 35. Here, no evidentiary hearing was conducted and no in camera review of the tapes was made. Under Lewis and McCrary, this was error.
In closing, we note that the trial court has discretion in deciding whether documents constituting discovery in a criminal case should be closed. It may be that, after conducting a hearing in which the media is allowed to participate, the trial court will exercise its discretion in favor of denying access to the tapes. Indeed, this may be its duty in order to protect the defendant's right to receive a fair trial in Seminole County. However, the media has the right to be heard prior to the entry of the court's ruling. See generally Wolfinger v. Sentinel Communications Co., 538 So.2d 1276 (Fla. 5th DCA 1989).
Accordingly, we quash the protective order and remand this matter to the trial court for an evidentiary hearing in accordance with this opinion.
PETITION GRANTED; ORDER QUASHED; CAUSE REMANDED for evidentiary hearing.
COBB and W. SHARP, JJ., concur.
NOTES
[1] Review of this order is proper pursuant to rule 9.100(d) of the Florida Rules of Appellate Procedure.