903 So.2d 322 (2005)
TIMES PUBLISHING CO., Petitioner,
v.
STATE of Florida and Joseph P. Smith, Respondents.
No. 2D04-4293.
District Court of Appeal of Florida, Second District.
June 10, 2005.
*324 George K. Rahdert and Penelope T. Bryan of Rahdert, Steele, Bryan, Bike & Reynolds, P.A., St. Petersburg, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Cerese Taylor, Assistant Attorney General, Tampa, for Respondent State of Florida.
Elliott C. Metcalfe, Jr., Public Defender, and Adam Tebrugge, Assistant Public Defender, Sarasota, for Respondent Joseph P. Smith.
CANADY, Judge.
Times Publishing Company ("Times Publishing") petitions for review of the trial court order restricting disclosure of certain discovery materials related to the criminal prosecution of Joseph P. Smith. Review is by way of a petition for writ of certiorari under Florida Rule of Appellate Procedure 9.100(d)(1), which governs petitions "to review an order excluding the press or public from access to ... judicial records, if the ... records are not required by law to be confidential." Times Publishing challenges only that portion of the trial court's order that was based on provisions of Florida Rule of Criminal Procedure 3.220, which governs discovery. Because we conclude that under the circumstances presented here the trial court erred in entering the challenged portion of the order under that rule, we grant Times Publishing's petition.

Background
On February 20, 2004, a grand jury issued an indictment charging Smith with the premeditated murder, kidnapping, and sexual assault of Carlie Brucia. Prior to receiving discovery materials from the State, Smith filed a motion asking the trial court to conduct an in camera inspection of these materials and to enter an order directing the State to seal them. Smith argued that all of the materials should be sealed for three reasons: (1) the materials are exempt from the public records law; (2) sealing the materials would avoid prejudicial pretrial publicity; and (3) sealing the materials would protect Smith's right to a fair trial. The trial court entered an order temporarily sealing the discovery materials upon delivery to Smith and establishing *325 a procedure for an in camera review of specific materials upon further motion of Smith. At the same time, the trial court granted Times Publishing's motion to intervene for the purpose of opposing Smith's motion.
Subsequently, Smith filed a further motion requesting an in camera review and the blanket sealing of the discovery materials. On August 27, 2004, after an evidentiary hearing, the trial court issued a written order denying Smith's request for a blanket sealing of the discovery materials but providing that portions of the materials should be temporarily sealed to protect Smith's right to a fair trial. The order further provided for the redaction of certain information in portions of the released materials to protect Smith's right to a fair trial or pursuant to particular provisions of section 119.07, Florida Statutes (2003).
The trial court's order also provided for the nondisclosure, pursuant to Florida Rule of Criminal Procedure 3.220(e), (l), and (m), of portions of the discovery materials consisting of certain FBI reports, witness statements, and investigative reports. In entering this portion of the order, the trial court relied on "a finding that if the sealed portions of the documents were disclosed, there would be a substantial risk to witnesses and other persons, such as unnecessary annoyance or embarrassment, which outweighs any usefulness of the disclosure." The order stated that "the court determined that privacy concerns of the non-parties in areas such as prior drug use or addiction or current medical conditions should not be released."
In its petition, Times Publishing only challenges that portion of the order that was based on rule 3.220, which governs discovery in criminal proceedings. Times Publishing argues that the provisions of rule 3.220(e), (l), and (m) were not a proper basis for withholding the materials in question from the public. Times Publishing asserts that the trial court departed from the essential requirements of the law and requests that this court quash that portion of the order and direct the affected records to be released. Smith and the State contend that the trial court's order was a proper exercise of its authority under rule 3.220.

Analysis
In evaluating the challenged portion of the trial court's order, we begin with the important general principle that once criminal investigative or intelligence information is disclosed by the State to a criminal defendant that information becomes a nonexempt public record subject to disclosure pursuant to section 119.07(1). See §§ 119.07(6)(b), .011(3)(c)(5). The public may, however, be denied access to such discovery materials in limited circumstances, including those where it is established that the release of the materials would (a) interfere with a defendant's right to a fair trial, see Fla. Freedom Newspapers, Inc. v. McCrary, 520 So.2d 32 (Fla. 1988); or (b) infringe on the privacy rights of a nonparty, see Post-Newsweek Stations, Fla. Inc. v. Doe, 612 So.2d 549 (Fla. 1992).
In entering the order under review, the trial court was acting on a request submitted by Smith to protect his right to a fair trial by preventing prejudicial pretrial publicity. See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); McCrary, 520 So.2d 32; Miami Herald Publ'g Co. v. Lewis, 426 So.2d 1 (Fla.1982). The challenged portions of the trial court's order were based, however, not on Smith's right to a fair trial but on the "privacy concerns" related to certain "witnesses and other persons."
Such privacy concerns may in some circumstances be a proper basis for *326 withholding discovery materials involved in a judicial proceeding from public disclosure. See Doe, 612 So.2d at 551; see also Barron v. Fla. Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988). Individuals seeking to prevent the disclosure of such information based on a claim that the disclosure would violate their right to privacy "bear the burden of proving that closure is necessary to prevent an imminent threat to their privacy rights." Doe, 612 So.2d at 551.
Such a privacy claim by a nonparty may be asserted pursuant to the provision of rule 3.220(m)(1) that "[a]ny person may move for an order denying or regulating disclosure of sensitive matters." (Emphasis added.) Under this provision, a nonparty has "standing to challenge the release of the discovery materials." Doe, 612 So.2d at 550.
Rule 3.220(l)(1) is also a potential basis for protecting the privacy rights of nonparties. It provides:
On a showing of good cause, the court shall at any time order that specified disclosures be restricted, deferred, or exempted from discovery ... or make such other order as is appropriate to protect a witness from harassment, unnecessary inconvenience, or invasion of privacy, including prohibiting the taking of a deposition.
(Emphasis added.) Under both subsection (l) and (m), nonparties may seek to protect their privacy interests: "[T]he broad language of rule 3.220 permits [a nonparty] to show cause for denying the [public] disclosure of ... discovery information ... in [a] criminal proceeding." Doe, 612 So.2d at 551.
In the instant case, however, no motion asserting a privacy claim and no "showing of good cause" was made by any nonpartyor by any party. Instead, the trial court on its own initiative addressed the privacy issues related to nonparties in ruling on Smith's claim regarding his right to a fair trial. This was inconsistent with the clear language of subsections (l) and (m), which contemplates that there be a specific assertion of privacy rightsor some other pertinent basisas a predicate for the consideration of an order preventing the disclosure of particular information. In the absence of a proper motion pursuant to rule 3.220(l) or (m), the trial court erred in relying on those rule provisions to order that discovery materials provided to Smith be withheld from the public. And even if a proper motion had been filed and considered by the trial court, the challenged portions of the order would nonetheless be erroneous because the trial court failed to make the required determination showing "that closure is necessary to prevent an imminent threat to [the nonparties'] privacy rights." Doe, 612 So.2d at 551.
Finally, we address the trial court's reliance on rule 3.220(e), which provides in pertinent part:
The court on its own initiative or on motion of counsel shall deny or partially restrict disclosures authorized by this rule if it finds there is a substantial risk to any person of ... unnecessary annoyance or embarrassment resulting from the disclosure, that outweighs any usefulness of the disclosure to either party.
(Emphasis added.) The text of this provision makes plain that, unlike subsections (l) and (m), it does not grant the court the authority to prevent public access to discovery materials, but instead authorizes limitation on the availability of discovery between the parties to a proceeding. The focus of this subsection is on weighing the "usefulness of the disclosure to either party." Such a weighing process is relevant only to whether it would be appropriate to deny a party access to otherwise discoverable *327 material. It has nothing to do with whether the public should be denied access to materials provided by the State to a criminal defendant in discovery. Although subsection (e)unlike subsections (l) and (m)authorizes the court to act "on its own initiative," that authority may only be exercised to deny a party access in discovery of particular information. Accordingly, rule 3.220(e) was not a proper basis for the challenged portions of the trial court's order under review here.
In sum, on the record before us in this case, there was no basis for the challenged portions of the trial court's order under rule 3.220. Subsection (e) has no application to the issue of public disclosure of documents provided in discovery. And subsections (l) and (m) may not be utilized to deny public access to discovery materials to protect the privacy rights of a nonparty in the absence of a proper motion specifically asserting a privacy claim.
We note that chapter 119 contains a provisionnot mentioned by the parties to this proceedingpermitting the denial of public access to discovery materials where the release of those materials would defame or threaten the safety of a victim or witness. Section 119.011(3)(c)(5) provides, in pertinent part, that
the court in a criminal case may order that certain information [provided to a criminal defendant by the State] be maintained in a confidential manner and exempt from the provisions of s. 119.07(1) until released at trial if it is found that the release of such information would:
a. Be defamatory to the good name of a victim or witness or would jeopardize the safety of such victim or witness....
The trial court did not make reference to this provision or any findings that the public disclosure of the information in question would "[b]e defamatory to the good name" of the witnesses or "would jeopardize [their] safety." The entry of an order under section 119.011(3)(c)(5)(a) on the court's own initiative may well be authorized where the requirements of that provision are met. Here, however, there is no basis for concluding that those requirements were satisfied. The trial court's references to "privacy concerns" and "unnecessary annoyance or embarrassment" clearly do not bring the challenged portions of the order on review within the scope of the exemption from disclosure under this provision of chapter 119. The release of materials may raise "privacy concerns" without either being defamatory or posing a threat to witness safety.

Conclusion
Based on the foregoing analysis of the pertinent law, we conclude that the challenged portion of the trial court's order denying public access to the public records in question was a departure from the essential requirements of law. And Times Publishing's injury from this error is "that it does not have access to otherwise public documents during trial," which is an injury that "cannot be remedied on postjudgment appeal." Times Publ'g Co. v. State, 827 So.2d 1040, 1041-42 (Fla. 2d DCA 2002). The requirements for granting certiorari relief thus are satisfied. The challenged portions of the trial court's order are therefore quashed.
Our disposition of this case is without prejudice to further proceedings in the trial court with respect to the discovery materials in question based on a proper motion under rule 3.220(l) or (m) seeking the nondisclosure of those materials.[1] Our *328 disposition is also without prejudice to the issuance of a properly justified order pursuant to section 119.011(3)(c)(5)(a).
Petition granted; order quashed in part.
STRINGER, J., Concurs.
DAVIS, J., Concurs with opinion.
DAVIS, Judge, Concurring.
I agree with the majority decision. However, I write to point out the difficult situation that results from our ruling. Although the trial court erred in ruling on issues that were not properly before it, the court entered the ruling in an attempt to resolve the gap in the statutes that this case so aptly illustrates.
First, we start with the principle that all criminal investigative information is exempt from section 119.07 until the information is disclosed to the defendant pursuant to the discovery rules contained in the Florida Rules of Criminal Procedure. See McCrary, 520 So.2d 32. Second, the Florida Rules of Criminal Procedure provide that "any person" may ask the trial court to restrict the disclosure of that portion of the discovery information that might violate that person's privacy rights even though the person is not a party to the criminal prosecution. Doe, 612 So.2d 549; see also Fla. R.Crim. P. 3.220(m). Finally, once the criminal investigative information is provided to the defendant, it becomes a public record and must be disclosed upon request unless the custodian of that information (the State) finds that the specific information is exempt from the application of section 119.07. See Tribune Co. v. Pub. Records, P.C.S.O. # 79-35504, Miller/Jent, 493 So.2d 480 (Fla. 2d DCA 1986).
As demonstrated by the majority opinion, however, the protection provided by the Florida Rules of Criminal Procedure is limited to those individuals who know that information about them is about to be disclosed and that their privacy rights might be violated. Thus, in the absence of knowledge that the disclosure is imminent, the individual cannot avail himself of the protection that the rules attempt to provide. Although a witness might know that he or she will be named and will have to appear publicly at a trial, it is unreasonable to assume that the witness would also anticipate that personal background information gathered by the State in its case preparation would become public upon release to the defendant. Likewise, it is unreasonable to assume that a caller to a tip line would anticipate his identity becoming public. The person most aggrieved by this system is the person who does not even know that his name has been reported as a potential suspect and thus does not anticipate his name becoming a matter of public information.
The seriousness of this issue involves more than just the fact that an individual's name and identifying information will be made public; it is the additional potentially inculpatory information that is associated with that name that implicates the individual's privacy right. In this case, some of the callers to the hotline gave descriptive information about the subject being reported. While the statement, "He looks like my ex-husband" may not be too embarrassing, some of the callers went on to suggest that the person named had committed other unseemly acts that were not only embarrassing but also unverifiedand in many cases purely speculative. To have one's name publicized with such potentially intimate and personal information, which may or may not be true, with no prior knowledge or notice of such a release, is grossly unjust.
*329 Florida Rule of Criminal Procedure 3.200(e) allows the trial court to impose certain restrictions "on its own initiative"; however, that rule is limited to disclosures between the State and the defendant. It may be that similar language should be added to subsections (l) and (m) to allow the trial court to exercise its judgment in protecting affected nonparties in their absence. That is what the trial court attempted to do here. After hearing from representatives of the press and weighing the issues of the public's need to know against the privacy rights of individual citizens, the trial court redacted the names and identifying information contained in the release. Although it was without authority to do this, as demonstrated by the majority's opinion, it is clear that what the trial court did was a reasonable attempt to protect the privacy of individuals left unprotected by the statute.
The rules, as correctly interpreted by the majority opinion, leave the person who needs to be present before the court to assert his or her privacy rights ignorant of this need to appear until after the disclosure has occurred. This is an injustice that needs to be addressed.
NOTES
[1] Because resolution of the question has not been necessary to determining the disposition of Times Publishing's petition, we have not decided whether the State has standing to assert a privacy interest of a nonparty.